## G. W. HOOKS v. JOHN H. KIRBY.

Decided December 29, 1909.

**1.—School and Asylum Lands—Sale—Act Construed.**

The Act of 1895, concerning the sale of school and asylum lands, contemplates two classes of persons to whom said lands might be sold, namely, actual settlers, and persons who should purchase the timber on said lands. Said law did not contemplate that the purchaser of the timber should become an actual settler on the land as a condition precedent to his right to purchase the same, nor that he should be governed by the rules prescribed for the actual settler who should apply for the purchase of the land for a home.

**2.—Same—Purchase of Timber Land.**

A purchaser of the timber upon school land under the provisions of the Acts of 1895 and 1897, had the absolute right to buy the land itself at any time within five years from the date of the purchase of the timber, or at least until all the timber was removed. This right formed a part of the contract and consideration when the timber was purchased and could not be impaired by subsequent legislation.

**3.—Records of Land Office—Construction—Notice.**

A purchaser of school land from a patentee of the same is chargeable with notice of such facts, affecting the validity of the patent, as an investigation of the records of the Land Office would disclose.

**4.—School Land—Purchase of Timber—Right to Purchase Land.**

The purchaser of the timber upon 640 acres of school land would have the prior right to purchase the entire 640 acres although at the time of his application to purchase, the timber had been removed from most of the land.

**5.—Patent—Title—Cancellation.**

A patent from the State evidences a title good as against every one not showing a superior claim to the land; and as to the holder of the superior claim it should not be cancelled until such claimant's right is perfected.

Appeal from the District Court of Jefferson County. Tried below before Hon. W. H. Pope.

*W. H. Davidson,* for appellant.—The records of the General Land Office of instruments from the State to lands or landed rights constitutes notice, and the bill of sale to timber, deposited in the Land Office, constitutes notice of the rights acquired by the purchaser of the timber. Rev. Stats., art. 4218q, 2877; Evitts v. Roth, 61 Texas, 86.

Parties acquiring notice of property rights or claims, whether through corporation connections or otherwise, are chargeable therewith and put upon inquiry. Rev. Stats., art. 4640; Maulding v. Coffin, 6 Texas Civ. App., 416; Bell v. Gammon, 3 App., C. C., sec. 404; Attaway v. Carter, 1 Posey, 73.

All parties are chargeable with constructive notice of public records of State lands, and are put upon inquiry of claims of individuals thereto or thereunder, and of rights acquired incident to such rights so claimed. Powell v. Haley, 28 Texas, 57; Slayton v. Singleton, 72 Texas, 209.

Purchasers of timber under the laws of 1895 and 1897 were not required to settle on the land in order to purchase it, but that right was given as a part of that same law, and entered into the consideration. Rev. Stats., art. 4218q and amendments; Rev. Stats., art. 4218y; Tolleson v. Rogan, 96 Texas, 424.

Rights acquired under and by law as it existed at the time of acquiring same, are not barred or destroyed by subsequent law. Rev. Stats., art. 4218q and amendment; Tolleson v. Rogan, 96 Texas, 424.

The right acquired by parties holding as the original vendee of the timber, or as his vendee, under the 1895 and 1897 laws, is a vested right not to be disturbed or repealed by subsequent enactments. Jumbo Cattle Co. v. Bacon, 79 Texas, 5; Bacon v. State, 2 Texas Civ. App., 692; Adkinson v. Porter, 73 S. W., 43; Tolleson v. Rogan, 96 Texas, 424; Martin v. Marr, 26 Texas Civ. App., 55; Clay v. Clay's Heirs, 35 Texas, 533; Collins v. Warren, 63 Texas, 314.

The acts of the Land Commissioner are not conclusive. Eastin v. Ferguson, 4 Texas Civ. App., 643; Franklin v. Kerlin, 32 Texas Civ. App., 380; May v. Hollingsworth, 32 Texas Civ. App., 245; Moore v. Rogan, 96 Texas, 375.

Parties fulfilling the requirements of the law under which rights vested, should, upon application to avail themselves of such rights, be awarded the same, if within the required time. Briggs v. Key, 30 Texas Civ. App., 565.

*H. O. Head, Denman, Franklin & McGown* and *Lanier & Martin,* for appellee.—The court correctly found that Kirby had no constructive notice of the claim of either of the Hooks to the land in controversy. The application of T. J. Hooks to buy the timber on the land and the record of such application in the Land Office was not constructive notice to Kirby, as the land had been patented to C. M. Votaw when Mr. Kirby bought from him, and there was nothing of record in the county in which the land was situated showing Hooks' claim. Rev. Stats., art. 4218q; Lewis v. Johnson, 68 Texas, 448; Brown v. Henderson, 31 S. W., 315.

McMEANS, ASSOCIATE JUSTICE.—Suit of trespass to try title brought by G. W. Hooks against John H. Kirby to recover 640 acres of land, being section No. 82, certificate No. 25/1207, Houston & Texas Central Railroad Company survey, situated in Jasper County. The plaintiff's petition contained only the ordinary allegations in actions of trespass to try title. Defendant answered by general denial and a plea of not guilty. The case was tried by the court without a jury and resulted in a judgment for defendant, from which plaintiff has appealed.

The trial judge filed his findings of fact and conclusions of law, which are as follows:

"1. On the —— day of ——, 1897, and under the Act of the Legislature of 1895 and 1897, T. J. Hooks, who was vice-president and general manager of the Hooks Lumber Company, who owned and operated a sawmill, applied to purchase from the Commissioner of the General Land Office public school section No. 82, located by virtue of certificate issues to H. & T. C. R. R. Co., No. 25/1207, being the land in controversy.

"2. The plaintiff, G. W. Hooks, was also interested in the Hooks Lumber Company; that all of the timber was cut and removed from the said section of land by T. J. Hooks and delivered to the Hooks Lumber Company, a corporation who manufactured same into lumber except about one-half a million feet, worth about $500, and that prior to the passage of the Act of the Twenty-seventh Legislature, page 292, concerning the sale of public school lands and repealing all laws in conflict therewith, T. J. Hooks conveyed the remaining timber on the land to the plaintiff, George W. Hooks. The original deed was deposited in the General Land Office at Austin, and was never recorded in the deed records of Jasper County.

"3. That T. J. Hooks on the —— day of August, 1901, sold the remaining timber on the land to George W. Hooks; that in 1900 C. H. Howard, acting as timber classifier of the State, at the instance of the Commissioner of the General Land Office, inspected this land and reported to him that all of the timber had been cut and removed. Subsequently, about the 1st of August, 1901, at the instance of plaintiff, the said Howard reinspected the said land and reported to the Land Office that there was about one-half million feet of timber remaining on the land; that through a mistake he had overlooked it. Plaintiff then made application to the Commissioner of the General

Land Office to purchase this land under the Acts of 1895 and 1897, and offered to the State Treasurer $2 per acre in payment therefor. The application was refused by the Land Commissioner and the money by the Treasurer, because the land was patented already to C. M. Votaw. Previous to Votaw's purchase from the State some ties had been cut off the land and sold to the Kirby Tie Company, of which defendant was president.

"4. That the land prior to the application of C. M. Votaw had been classed as dry grazing land on the report of the district surveyor and classifier of the General Land Office that the timber had been cut and removed therefrom, and (was) placed on the market for sale, and C. M. Votaw made his application to the General Land Office, prior to the passage of the Act of April 19, 1901, and under the Acts of 1895 and 1897, to purchase the land. It was awarded to him, and on payment of the consideration of the land was patented to him before the purchase of the timber by the plaintiff, G. W. Hooks, and before the Act of April 19, 1901, was passed.

"5. That C. M. Votaw by general warranty deed and the consideration recited therein conveyed the land to John H. Kirby on the —— day of May, 1901. That at the time John H. Kirby purchased the land from C. M. Votaw there was no deed for the land or timber on file in the deed records of Jasper County, to T. J. Hooks or George W. Hooks, nor was there any application to purchase the land by G. W. Hooks, nor has there ever been one filed with the county clerk of Jasper County, Texas; nor has George W. Hooks ever paid any money to said clerk for the land or filed his obligation with him to the State therefor.

"6. That at the time C. M. Votaw conveyed the land to John H. Kirby the latter had no actual or constructive notice of any application by George W. Hooks to purchase the land, nor did he know that the said George W. Hooks had ever purchased the timber from T. J. Hooks; that the said Kirby paid C. M. Votaw the full value of the land at the time it was conveyed to him.

"7. That neither T. J. Hooks nor George W. Hooks ever settled on the land, nor did either one of them ever reside or intend to reside in Jasper County, but were residents of Hardin County.

"The land never having been settled on by the plaintiff or his vendor, the Acts of 1895 and 1897 were not complied with; nor was Act of 1901, page 292, complied with either. Besides settling on the land he should have filed with the clerk of Jasper County, accompanied with the necessary money to pay for the land, an affidavit of settlement as required by said Act, made by the plaintiff; that the Act under which the timber was bought by T. J. Hooks, in so far as the purchase of the land is concerned, is repealed by the Act of April 19, 1901; that George W. Hooks had no such vested right to buy the land more than any other citizen of Texas, therefore he had no right to buy the land without settling on it, nor any right to buy it after it had been patented to C. M. Votaw.

"I conclude he has no title to the land, and if he had he had not offered to do equity by tendering the money paid by C. M. Votaw

to the State for the land, to the defendant Kirby. Hence, it follows he has no title.

"I conclude that the land having been patented to C. M. Votaw by the State, and Votaw having conveyed the same to Kirby for a valuable consideration without notice on the part of George W. Hooks to buy the land for the timber from the State, and Kirby, having bought the land from Votaw in good faith, is the owner of the legal title under the law and also owner of the equitable title. That the plaintiff, George W. Hooks, not having complied with the laws of 1895, 1897 and 1901, in any particular, has no interest in the land sued for.

"Judgment is accordingly rendered herein for the defendant."

Appellant by an appropriate assignment of error attacks the sixth finding of fact, and by many assignments challenges the court's conclusions of law. Several of these are not presented in such a way as to entitle them to consideration, and those properly presented will not be passed upon in detail. In order to get a clearer understanding of the issues involved we restate in chronological order the various transactions leading up to the controversy.

On May 24, 1897, pursuant to an application theretofore made by T. J. Hooks, the timber on the land in question was sold to him by the Commissioner of the General Land Office. This conveyance was evidenced by an instrument in writing which was filed and retained in the General Land Office.

Some time in 1900, one Howard, timber classifier for the State, at the instance of the Commissioner of the General Land Office, inspected the land and reported to the Commissioner that all the timber had been cut and removed; and thereupon the land was classified by the Commissioner as dry grazing land.

On March 30, 1901, C. M. Votaw made application to purchase the land as a detached section.

On August 27, 1901, T. J. Hooks sold to G. W. Hooks, the appellant, the timber rights on the land acquired by him in his purchase from the State. This sale was evidenced by an instrument in writing, which was filed in the General Land Office.

On October 9, 1901, the land was patented to Votaw.

It appears that in October, 1901, the classifier, Howard, reinspected the land and reported to the Commissioner that he was mistaken as to the land having been denuded of timber as stated in his former report, but that the timber had not been removed off of about fifteen acres in the northwest corner of the section, and that there was some timber on other portions of it. This report was sworn to by him on October 7, 1901, but the evidence does not show when it reached the General Land Office. A letter written by Howard to the Commissioner in regard to the same matter is dated October 17, 1901.

January 2, 1902, Votaw, by proper deed of conveyance, sold the land to appellee Kirby, who had no actual notice of the purchase of the timber by T. J. Hooks, nor of its sale by the latter to G. W. Hooks.

May 10, 1902, appellant G. W. Hooks made an application to the Commissioner of the General Land Office for the purchase of the

land under the provisions of the Act of 1895, and amendment thereto of May 18, 1897, claiming the right to purchase as the owner of the timber by virtue of his purchase from T. J. Hooks, and at the same time paid to the State Treasurer two dollars for each acre in the section. This application was rejected by the Commissioner.

Section 16 of chapter 47, General Laws of 1905, page 68, which is carried into Sayles' Statutes as article 4218q, provides:

"Sec. 16. The Commissioner of the General Land Office shall adopt such regulations for the sale of the timber on the timbered lands as he may deem necessary and judicious. Such timber shall not be sold for less than five dollars per acre cash, except in such cases as the Commissioner may ascertain by definite examinations by an approved agent appointed by him for that purpose, to be paid by the purchaser, to be sparsely timbered or containing timber of but little value, in which case he may sell the timber on such sections or part of sections at its proper value; provided such timber is sold at not less than two dollars per acre. The purchaser shall have five years from the date of his purchase within which to remove the timber therefrom, and in case of failure to do so, such timber shall thereby be forfeited to the State without judicial ascertainment; provided, that all timbered lands from which the timber has been cut and taken off may be placed on the market and sold as agricultural or grazing lands, according to the classifications to be made by the Land Commissioner; provided, that the purchaser or his vendees of any such timber shall have the right to purchase the land upon which such timber so purchased is situated at two dollars per acre cash, at any time before the expiration of five years from date of purchase of timber under the provisions of this Act."

This Act was amended by the Legislature in 1897 without change in the language of this section.

The Act of 1895 provides for "the sale of all lands heretofore or hereafter surveyed and set apart for the benefit of the public free schools and the several asylums," etc. It provides for the classification of all such lands and when classified to be subject to sale, but to actual settlers only, and limits the quantity that may be purchased by any one actual settler to 640 acres, unless the land has been classed as pasture lands, in which case not exceeding four sections may be sold to one person. Section 8 of the Act gives a preference right to a *bona fide* settler upon any of such lands to purchase the same within ninety days from the time the Act went into effect, or within ninety days after such land is placed on the market, and confers the right upon such settler who may purchase one section of agricultural land to purchase under certain circumstances three strictly pastoral sections. The ninth section requires that the purchaser or his vendee reside upon his purchase for three consecutive years next succeeding the date of purchase, and within two years after the expiration of such period to make proof of such occupancy to the Commissioner of the General Land Office.

From the foregoing reference to the Act we think it will be seen that the law contemplated two classes of persons to whom sales of lands should be made, viz., actual settlers, and persons who should

purchase timber. The right is given to the purchaser of the timber obviously to protect him for the money he has been required to pay to the State in advance, and which would be lost to him if it were impossible to remove the timber within the five years given him by the Act. That the law did not contemplate that the purchaser of the timber should become an actual settler on the land as a condition precedent to his right to purchase within five years after his purchase of the timber, is manifest, we think, from the language of section 16, as well as the general scope and purpose of the Act itself. This will best be seen by a comparison of the sections relating to the two classes of contemplated purchasers. One is limited in the quantity he may buy, the other is not; one purchases only on time, the other is required to pay cash; one must pay according to a classification of the land, the other is required to pay a price certain which is fixed by the Act; one must be an actual settler and therefore an individual, the other is not required to occupy the land, and, for aught that appears in the section quoted, may be a corporation. We think this sufficient to show that there was in the legislative mind the two classes above referred to, and that it was not intended that the purchasers of timber who should within the prescribed time apply for the purchase of the land upon which their timber was situated, should be governed by the same rules prescribed for the actual settler who should apply for the purchase of the land for a home.

It is contended that the last sentence of section 16, which provides that the purchaser or his vendees of any such timber shall have the right to purchase the land, upon which said timber so purchased is situated, at two dollars per acre cash, at any time before the expiration of five years from date of purchase of timber "under the provisions of this Act," clearly shows that such purchasers come within the provisions of the Act limiting sales to actual settlers only, and as appellant was not an actual settler he had not shown in himself any right to purchase the land superior to that of the grantee Votaw. We think that the language, "under the provisions of this Act," clearly refers to the provisions conferring rights upon timber purchasers and to buy the land without occupancy, at a fixed price for cash, and was not intended to bring such purchasers within the provisions of the sections requiring sales to be made to actual settlers only, upon credit only, and at a price to be determined by classification.

But it is contended that the Acts of 1895 and 1897 were superseded by the Act of 1901, and that as appellant did not make his application to purchase the land until after the latter Act went into effect, his rights must be determined and are controlled by that Act. The eighth section of the Act of 1901 is identically the same as section 16 of the Act of 1895 and article 4218q, except in the closing sentence, which, after providing that the owner of the timber shall have the right to purchase the land, further provides "at the valuation fixed by said Commissioner on the same terms and conditions as other lands of like classification are sold under the provisions of this chapter." The other provisions of the Act, save the eighth section having reference to sales of timber and the purchase of timbered

land by the owners of the timber, provide for sales to actual settlers only, and we think the language of the eighth section, above quoted, should be construed in connection with the entire Act so as to require actual settlement upon the land by the purchaser of the timber or his vendee, as a condition precedent to his rights to purchase it.

But does the Act of 1901 govern the rights of appellant in the purchase of the land in controversy? We think not. The law under which the timber was purchased from the State gave the absolute right to the purchaser to buy the land at any time within five years from the date of the sale of the timber to him, or at least until all the timber is removed. This right formed a part of the consideration paid for the timber, and entered into the contract as much as did the cash consideration of the five dollars per acre which he paid. When he paid the cash and took a deed to the timber the law wrote into the contract that he was also thereby granted the right to buy the land within a certain time for a certain further consideration, and this right became vested and can not be impaired by subsequent legislation. (Jumbo Cattle Co. v. Bacon, 79 Texas, 5.)

It follows therefore that the issuance of the patent to Votaw was, in view of the circumstances, erroneous, and that the patent should be cancelled, and that the land should be awarded and patented to appellant upon compliance by him with the law under which his application for purchase was made.

We can not subscribe to the proposition of appellee that Kirby was an innocent purchaser. True, he had no actual notice of the prior right of Hooks to purchase the land, but he was charged with notice of such facts pertaining to the sale of the land by the State as he would have acquired by an investigation of the records of the General Land Office, and such an investigation would have disclosed to him that the State, by selling the timber, had granted to T. J. Hooks or his vendee the right to purchase the land under the provisions of section 16, Acts of 1895, and that this right might be exercised at any time within five years from the date the timber was sold, unless all the timber was sooner removed; and Kirby was chargeable with notice that all the timber had not been taken from the land.

Nor do we think that the right of appellant to purchase was limited to the number of acres from which the timber had not been removed or to the eighty acres upon which such remaining timber was situated, as contended by appellee. Hooks purchased the timber on 640 acres, and until all of it was removed he or his vendee had the right to purchase the land.

Other propositions urged by appellee in support of the judgment can not be sustained. We think that under the undisputed facts the judgment of the court below should have been for appellant, and said judgment is therefore reversed and judgment is here rendered for appellant.

### ON MOTION FOR REHEARING.

On further consideration we are of the opinion that our conclusion that the patent issued to Votaw should be cancelled, is erroneous,

and that statement in the opinion is hereby withdrawn. The patent having issued to Votaw, the title evidenced thereby is good as against anyone not showing a superior claim to the land. This, we think, was shown by the appellant; but to entitle him to a patent he must comply with the law in force at the time he made his application to purchase.

The motion for a rehearing will be granted to the extent of the withdrawal of the statement that the Votaw patent should be cancelled, and in all other respects the motion is refused.

*Reversed and rendered.*

Writ of error refused.