### WILSON D. WING V. JAMES DUNN AND WIFE.

Decided March 22, 1910.

**1.—School Land—Purchase of Timber—Statute Construed.**

Under the Act of 1895 as amended by the Act of 1897, the right of one who had purchased the timber upon public school land to purchase thereafter the land on which the timber stood, was contractual and vested and could not be impaired or taken away by subsequent legislation. Hence said right was not in any way impaired by the Act of 1901.

**2.—Same—Purchase of Timbered Land.**

Under the provisions of article 4218q of Sayles' Rev. Stats., the purchaser of the timber upon public school land had the right to purchase the land on which the timber stood if the right was exercised within the time and in the manner provided by law; and it was immaterial that at the date of the purchase of the timber he knew that the timber would not be removed from the land within five years from said date.

**3.—Same—Occupancy not Required.**

To entitle one to become the purchaser of timbered school land it is not required that he be an actual settler thereon.

**4.—Same—Purchase by Corporation.**

The Acts of 1895 and 1897 concerning the sale of timbered school land, put no restrictions upon the purchase of the timber, either as to the character of the purchaser or the amount purchased; hence, a corporation was qualified to buy as well as a natural person; and having bought the timber it would have the exclusive right to buy the land by complying with the requirements of the law.

**5.—Same—Act of 1901 Construed.**

Under the Act of 1901 the purchaser of the timber upon public school, university or asylum land could not purchase the land simply as owner of the timber, but he must purchase it as classified agricultural or grazing land and upon the same conditions as any other purchaser of land of like class. As owner of the timber he had a preference right to purchase the land during the period he had the right to remove the timber.

**6.—Patent—Fraud upon State—Who may Attack.**

When a patent to public school land has been obtained by a fraud practiced upon the State, the title of the patentee is not open to attack in trespass to try title except by the State or by some one having a prior equitable or legal right.

**7.—Public School Land—Actual Settler—Preference Right to Purchase—Acts Construed.**

The preference right given by the Act of 1895 to actual settlers upon school land to purchase the same was repealed by the Act of 1897. Hence one who settled upon school land in 1891 with the intention of purchasing the same, but failed to take the steps required by law until the Act of 1895 was repealed, had no preference right to purchase the same as against one who had in the meantime become vested with the right to purchase.

**8.—Same—Recording List—Negligence of County Clerk.**

The failure of a county clerk to record in the book provided for that purpose a list of appraised and classified school land received from the Commissioner of the General Land Office, will not excuse an actual settler upon school land, who intended to purchase the same but who did not know that the list had been received, from taking the steps prescribed by law to preserve and exercise his preference right to buy.

Appeal from the District Court of Jasper County. Tried below before Hon. W. B. Powell.

*Coke, Miller & Coke* and *H. C. Howell,* for appellant.

*Geo. E. Holland,* for appellees.—The patent under which plaintiff claims is void because at the time of its date the Commissioner of the General Land Office had no authority to sell the land directly or indirectly to a corporation and in the purchase of the land from the State, Wallis, Landes & Co. acted for Beaumont Lumber Co., a corporation, the true beneficiary. Lufkin L. & L. Co. v. Terrell, 100 Texas, 406; Rev. Stats., art. 4042; Mound Oil Co. v. Terrell, 99 Texas, .625.

The Beaumont Lumber Co. being a corporation and not possessing the power to purchase land generally, before any title would pass to it under its deed from Wallis, Landes & Co. it must be shown to be such an acquisition of the land by it as is authorized by law, and in the absence of such showing no title passed. Sayles' Civ. Stats., arts. 651, 749c.

Appellee having entered upon the land under the Act of 1889 and fixed his rights at that time, his rights became contractual and that law fixed his status and is the full measure of his rights and liability, and no subsequent legislation can in any way modify or change such fixed status, but as to him the land in controversy remains under the Act of '89 and as though there had been no subsequent legislation affecting its sale by the State. Sayles' Civ. Stats., arts. 4287, 4290, 4201; Mayor v. Houston City St. Ry. Co., 83 Texas, 555; Quinlan v. Houston & T. C. Ry. Co., 24 S. W., 695; Maynard v. Freeman, 60 S. W., 335.

After having entered upon the land while it was subject to sale to actual settlers and having made valuable improvements thereon and continuously resided thereon in good faith with the intention of purchasing from the State under the law giving him a preference right to purchase the land for six months after its classification and appraisement, appellee is entitled to such right, and same is a vested right that can not be destroyed, and continues open to him for six months after the land is appraised and classified and such classification and appraisement is recorded in the bound book provided by law for that purpose in the county clerk's office. Simpson v. Oats, 102 Texas, 186; Moss v. Dowman, 176 U. S., 413; Howard v. Perry, 7 Texas, 266; Milam County v. Bateman, 54 Texas, 163; Gullett v. O'Connor, 54 Texas, 416; Snider v. Methvin, 60 Texas, 499; Mayor v. Houston City St. Ry. Co., 83 Texas, 555; Quinlan v. Houston & T. C. R. Co., 24 S. W., 695; McLeary v. Dawson, 87 Texas, 538; Maynard v. Freeman, 60 S. W., 335; Nelson v. Northern Pac. Ry. Co., 188 U. S., 108; Montgomery v. Casson, 16 Cal., 189; Baker v. Burroughs, 2 Texas Civ. App., 341; Wright v. Hawkins, 28 Texas, 471; Burleson v. Durham, 46 Texas, 157; DeMontel v. Speed, 53 Texas, 342; Monroe Cattle Co. v. Becker, 37 L. Ed. (U. S.), 77; Cox v. Houston & T. C. Ry. Co., 68 Texas, 231; Best v. Baker, 3 Texas Civ. App., 551; Harris v. Byrd, 3 Texas Civ. App., 677; Carrington v. Harris, 50 S. W., 197.

McMEANS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by appellant as plaintiff, against appellees as defendants, to recover a section of land in Jasper County. Appellees answered by general demurrer, plea of not guilty, and pleaded specially and affirmatively, in substance, as follows:

That the land in controversy is a portion of the public school, asylum and university lands of the State described in title 89 of the Revised Statutes, and that neither plaintiff nor anyone under whom he claims ever located, settled upon or lived on said land as required by article 4287 of said statutes; that neither plaintiff nor anyone under whom he claims was ever an actual settler on said land, and because thereof plaintiff's title is void; that the plaintiff is not the owner in good faith of the land in controversy, but is holding the same in trust for the Beaumont Lumber Company, a corporation not authorized to hold same; that said land was in fact purchased from the State by the Beaumont Lumber Company, and in making such purchase Wallis, Landes & Co. acted for and on behalf of said lumber company, and said sale to and purchase by Wallis, Landes & Co. was fictitious and simulated and made for the purpose of evading the provisions and policy of the laws of the State prohibiting the sale of any of said lands to or the purchase thereof by a corporation, for which reason said transactions · are fraudulent and void; that said lumber company is a corporation and has no right, under its charter, to acquire or hold land in Texas, and was without power to purchase, own or hold the land in controversy, and because thereof the pretended sale of said land is void and the title thereto remains in the State, and plaintiff has never acquired any title thereto. That defendants entered upon said lands on or about January 1, 1891, prior to the patenting thereof, with the intent and purpose of acquiring the same by purchase from the State as actual settlers thereon, and have since continuously resided upon same, cultivating, using and enjoying it, and openly claiming the same as actual settlers thereon, and have continuously stood ready and willing to purchase the same from the State as soon as it was classified under the law, and have continuously endeavored to have the same classified so that it could be applied for by them, and during all of said time have had no other home. Defendants set out permanent and valuable improvements made by them on the land in good faith. That the land has never been listed and the classification and valuation given to the county clerk of Jasper County as required by law, and defendants, although bona fide settlers thereon, have never been given the right or privilege of purchasing the land as required by article 4290 of the Revised Statutes of 1895; that they have always stood ready and willing, and now stand ready and willing, to purchase the land as bona fide settlers upon any terms, classification and valuation that may under the law be placed thereon, and this they are entitled under the law to do. Defendants offer to do equity in all things, and if it should be held that plaintiff should be reimbursed in purchase money expended, then they offer to pay to the party adjudged to be entitled thereto all purchase money or other sums they may be entitled to under the facts. That the land is

held by plaintiff in trust for the Beaumont Lumber Company. They pray that said company be made party defendant to the suit and required to answer, and on trial they be adjudged to be the owners of the land sued for or so much thereof as under the law they are entitled to hold, and to that end they tender plaintiff and the Beaumont Lumber Company all sums of money legally paid by them to the State as purchase money for said land, and such further sums as they may show themselves entitled to; for affirmative relief quieting their said title, and for judgment for the restitution to them of said property; and they further pray that, if not entitled to the relief above prayed for, they have judgment for the improvements in good faith placed by them on said land and now on same.

The case was tried before the court without a jury, and the court, concluding that neither appellant nor appellees had any title to the land in controversy and that the same was in the State, rendered judgment that plaintiff take nothing by his suit and that defendants take nothing by their cross-action and go hence without day, to which judgment appellant duly excepted and has brought the case before us on appeal.

The statement of the case made by appellant in his brief is thought to be correct and is adopted by us.

On November 14, 1898, Wallis, Landes & Co., a partnership composed of Joseph E. Wallis, Henry A. Landes and Charles L. Wallis, applied to the Commissioner of the General Land Office to purchase under the Act of April 16, 1895, as amended by the Act of May 19, 1897, the timber on eight sections of land situated in Jasper County, including the land in controversy, which application was received in the Land Office November 15, filed, and the timber awarded thereunder November 22, 1898. On November 25, 1898, the Commissioner of the General Land Office, reciting the payment to the Treasurer of the State of $13,771, being the price of the timber on aforesaid eight sections, conveyed said timber to Wallis, Landes & Co., under authority and by virtue of the Acts of 1895 and 1897 above mentioned. Prior to the purchase of said timber, the same and the land on which it stood had been duly appraised and classified and placed upon the market for sale by the Commissioner of the General Land Office as timbered lands, and notice thereof had been forwarded to the county clerk of Jasper County and was on file in his office prior to and at the time of the application of Wallis, Landes & Co. to purchase said timber, but said notice, from neglect of the clerk, had not been recorded in the book of classification of school land in said office, and appellees did not know it was on file in the said clerk's office.

October 21, 1903, Wallis, Landes & Co., through Joseph E. Wallis, a member of said firm, made application to purchase the land in controversy, under title 87, chapter 12a, Revised Statutes, and Act of May 19, 1897, stating under oath that the timber on said land had been purchased and was owned by Wallis, Landes & Co., and had not been cut. Said application was received and filed in the Land Office October 22, and the land was awarded thereunder October 24, 1903. October 30, 1903, said Wallis, Landes & Co.

paid to the State Treasurer the price of the land in controversy. November 21, 1903, said land was patented by the State to Wallis, Landes & Co., said patent reciting: "Said land having been purchased and fully paid for in accordance with an Act of 1895, and the amendment thereto by the Act of May 19, 1897."

January 14, 1904, James E. Wallis, Henry A. Landes and Charles L. Wallis, as partners composing the said firm of Wallis, Landes & Co., conveyed the land in controversy, together with other land, to the Beaumont Lumber Company, a Texas corporation. Said deed expressed a consideration of $36,143, of which $20,839 was acknowledged as paid in cash and the remainder was evidenced by the five notes of said Beaumont Lumber Company, payable to said Wallis, Landes & Co., for $3,606.80 each, payable one, two, three, four and five years after date, respectively, with ten percent interest from October 27, 1903, payable semiannually. A lien was by said instrument expressly reserved to secure the payment of said five notes.

By deed of January 15, 1904, Beaumont Lumber Company conveyed to appellant the same land conveyed to said company by Wallis, Landes & Co. by above mentioned deed, the consideration recited being the assumption of $6,800 due to Wallis, Landes & Co. by Beaumont Lumber Company, and in addition the five notes above mentioned made by said lumber company to said Wallis, Landes & Co. Said deed last mentioned was authorized by a resolution of the board of directors of said lumber company. The consideration mentioned in the deed from Beaumont Lumber Company to appellant had been fully paid by plaintiff at the date of the trial.

On November 14, 1898, Wallis, Landes & Co. entered into a contract with Beaumont Lumber Company, in words and figures as follows:

"The State of Texas,
 County of Jefferson.

"Whereas, Wallis, Landes & Co., of Galveston, Texas, a firm composed of J. E. Wallis, H. A. Landes and C. L. Wallis, have purchased from the State of Texas the timber on the following lands situated in Jasper County, Texas, described as follows:

| Section. | Certificate. | Grantee. | Acres. | Price per acre Dols. Cts. |
|---|---|---|---|---|
| 106 | 25-1229 | H. & T. C. Ry. Co. | 640 | $3.00 |
| 108 | 25-1230 | " | 640 | 3.50 |
| 110 | 25-2131 | " | 640 | 2.00 |
| 112 | 25-1232 | " | 640 | 2.25 |
| 246 | 29-60 | " | 611 | 3.00 |
| 114 | 25-1219 | " | 640 | 2.25 |
| 136 | 25-1281 | " | 566 | 3.00 |
| 140 | 25-1283 | " | 640 | 3.00 |
| 142 | 25-1234 | " | 640 | 2.00 |
| 144 | 25-1235 | " | 640 | 2.00 |
| 146 | 25-1237 | " | 640 | 2.00 |
| 152 | 25-1240 | " | 640 | 2.00 |

"And, whereas, the total price of said timber amounts in the aggregate to the sum of $18,891, all of which has been paid by the said Wallis, Landes & Co. to the State of Texas; and,

"Whereas, the said Wallis, Landes & Co., or their vendees, have five years from the date of the purchase of said timber from the State of Texas within which to cut and remove timber from said lands; and,

"Whereas, the said Wallis, Landes & Co. have agreed to sell and convey to the Beaumont Lumber Company, a corporation duly incorporated, of which F. L. Carroll is president, George W. Carroll is vice-president, and Jno. N. Gilbert is secretary and treasurer, the domicile of said corporation being at Beaumont, in Jefferson County, Texas, all the timber on the above described lands being the same timber purchased by the said Wallis, Landes & Co. from the State of Texas, and for which timber the said Beaumont Lumber Company has agreed to pay and does hereby agree to pay to the said Wallis, Landes & Co. at their office in Galveston, Texas, the aggregate principal sum of Twenty Thousand Seven Hundred and Eighty-five and 25-100 Dollars ($20,785.25) besides interest as follows, to wit: On or before one year after date the sum of Three Thousand Seven Hundred and Seventy-eight and 20-100 Dollars ($3,778.20); on or before two years after date the further sum of Three Thousand Seven Hundred and Seventy-eight and 20-100 Dollars ($3,778.20); on or before three years after date the further sum of Three Thousand Seven Hundred and Seventy-eight and 20-100 Dollars ($3,778.20); on or before four years after date the further sum of Three Thousand Seven Hundred and Seventy-eight and 20-100 Dollars ($3,778.20); on or before five years after date the further sum of Five Thousand Six Hundred and Seventy-two and 45-100 Dollars ($5,672.45), with interest on each of said installments of principal from the date hereof until paid at ten percent (10 percent) per annum, said interest being payable semiannually as it accrues, all past due interest to bear interest at the rate of ten percent (10 percent) per annum, and both principal and interest payable at Galveston, Texas, with ten percent (10 percent) additional on the aggregate amount of the principal and interest, if default should be made in the payment of any or either of said annual installments, as attorney's fees, and it being expressly understood that default in the payment of either or any of said installments of principal or of said semiannual installments of interest shall, at the option of the said Wallis, Landes & Co., mature all other said installments; and,

"Whereas, it is hereby agreed by and between the said Wallis, Landes & Co. and the said Beaumont Lumber Company that in the event the said Beaumont Lumber Company shall at any time before the expiration of five years from the date hereof cut any of the timber on any of the sections of land hereinbefore described, then and in such case, before cutting any of such timber from any of such section, the said Beaumont Lumber Company shall and will pay to the said Wallis, Landes & Co., or to their assigns, at Galveston, Texas, the price paid by Wallis, Landes & Co. to the State of Texas for the timber as hereinbefore stated, and in addition thereto twenty-

five cents (25 cts.) per acre for each acre of each section, with ten percent (10 percent) interest on such aggregate amount from this date until paid, and upon such payment last aforesaid being made by them, the said Wallis, Landes & Co. shall and will thereupon convey to the said Beaumont Lumber Company the timber upon such section by a written instrument of conveyance with special warranty, but without any warranty as to the quantity of timber on any such section, and such amount so paid as aforesaid by the said Beaumont Lumber Company for each such section shall constitute and be a credit in favor of the said Beaumont Lumber Company under this contract.

"It is further stipulated and agreed between the parties that if within five years from the date of the purchase of said timber by the said Wallis, Landes & Co. from the State of Texas, said timber is not cut and removed from all of said lands, then and in that case the said Wallis, Landes & Co. will purchase the land, upon which may be situated any such timber not cut and removed, from the State of Texas after the expiration of five years from the date of their said purchase of said timber from the State if the State will sell to them such land, and that they, the said Wallis, Landes & Co., will thereupon sell and convey to the said Beaumont Lumber Company the land so purchased by them, as aforesaid, for the price paid by them therefor to the State of· Texas with any necessary and proper costs and expenses that they may incur in such purchase, with interest on the aggregate amount at the rate of ten percent (10 percent) per annum from the date of such purchase, to be paid by the said Beaumont Lumber Company to them, the said Wallis, Landes & Co., at Galveston, Texas, in five equal annual installments, with interest on each annual installment, and a stipulation as to attorney's fees, as hereinbefore provided in respect to the timber hereinbefore agreed to be sold by the said Wallis, Landes & Co. to the said Beaumont Lumber Company, and with a like stipulation as to the effect of any default by the said Beaumont Lumber Company in the payment of any installment either of principal or interest, and such sale and conveyance to be by special warranty deed from the said Wallis, Landes & Co.

"And the said Beaumont Lumber Company further promises and agrees that it will protect and preserve all of said timber and said land from being depredated on, and that in the event said land shall be purchased from the State of Texas by the said Wallis, Landes & Co. as hereinbefore provided for, the conveyance hereof by the said Wallis, Landes & Co. to the said Beaumont Lumber Company shall be by special warranty deed, and that a vendor's lien shall be reserved on said land to secure the faithful payment by the said Beaumont Lumber Company of each of said five annual installments.

"It is further expressly understood and agreed that the said Beaumont Lumber Company shall and will give to the said Wallis, Landes & Co., at Galveston, Texas, six months written notice before the expiration of five years from the date of the purchase of said timber by the said Wallis, Landes & Co. from the State of Texas,

specifying in said notice the particular tract or tracts of land from which the timber has not been cut and removed.

"It is further understood and agreed between the parties hereto, that the failure on the part of the said Beaumont Lumber Company to comply with any of the conditions or terms of this contract, shall immediately mature and make payable to the said Wallis, Landes & Co. said sum of Twenty Thousand Seven Hundred and Eighty-five and 25-100 Dollars ($20,785.25), with interest as aforesaid, and that the title to said timber is expressly reserved and retained in themselves by the said Wallis, Landes & Co. until paid for, as aforesaid, by the said Beaumont Lumber Company.

"In testimony whereof, and in pursuance of a resolution of its board of directors, the said Beaumont Lumber Company has caused this contract to be executed by its vice-president (its president being absent) and secretary, and attested by its corporate seal at Beaumont, Texas, this 14th day of November, 1898, and the said firm of Wallis, Landes & Co. have signed the same by their firm name at Galveston, Texas, this 14th day of November, 1898."

Appellees moved upon the land in controversy in 1891 with the intention of buying it from the State. After they had been on the place about three years they applied to E. I. Kellie, then county surveyor, to survey the land for them, and thereafter called on him at various times to make the survey, but he never did survey the land. They paid the money necessary to have the survey made, which money was afterwards returned to them by Judge W. W. Blake, county judge of Jasper County. They never deposited with the clerk any money to pay for the land and never applied to the Commissioner of the Land Office to buy the same, but their only application was made to Kellie. Appellees now live upon the land and have lived there since 1891, and have made upon the land certain improvements which the court found to be worth at least $2,000. Appellees' only right, title or interest in the land in controversy arises out of the foregoing facts.

To the above may be added that just before the sale of the land in controversy to appellant by the Beaumont Lumber Company, the board of directors of said company passed a resolution in which it is recited that said company had, on November 14, 1898, entered into a contract with Wallis, Landes & Co., "by which the said Wallis, Landes & Co. agreed and bound themselves to buy for account of the Beaumont Lumber Company the timber from the State of Texas situated upon the following described lands" (which included the land in controversy) "under the terms and conditions set out in the said contract by which in substance said Wallis, Landes & Co. were to buy from the State of Texas for a total price of about $20,785.25 the timber upon said surveys of lands, and by which the Beaumont Lumber Company in substance were to reimburse the said Wallis, Landes & Co. therefor with certain stipulated interest benefits running to the said Wallis, Landes & Co., and by which furthermore at the expiration of five years from the date of said contract said Wallis, Landes & Co. were to procure from the State of Texas patent on the above described lands and were then under said contract to

deed said lands to the Beaumont Lumber Company, retaining a vendor's lien upon said lands to secure the purchase price, which purchase price was to be the same as paid to the State of Texas for the fee of said lands, together with interest at ten percent running to Wallis, Landes & Co. over a period of five years and certain other incidental expenses and charges." The resolution further provided for a sale of the land in controversy to appellant, under certain terms and conditions.

The court found that the timber was purchased by Wallis, Landes & Co. under the Act of 1895 and the amendment thereto of 1897, and that the land on which the timber stands was purchased by them under the aforesaid laws as amended by the Act of 1901. Article 4218q of Sayles' Statutes, section 16, of the Act of 1895. The Act of 1895 was amended by the Act of 1897, but no change was made in section 16, and the changes worked by the amendment in the Act of 1895, it is not material here to state. Without stopping now to indicate in detail the rights a purchaser of timber under article 4218q acquired to thereafter purchase the land on which the timber stood, it is sufficient to say that such rights as were so acquired were contractual and vested, and could not be impaired or taken away by future legislation. If under the Act of 1895 as amended in 1897, which entered into and formed a part of the contract of purchase of the timber, the owner of the timber had the right to purchase the land on the terms in said law provided, then his rights were not and could not be affected by the Act of 1901, even though so intended by the Legislature, of which intention there is no evidence. Sayles' Statutes, article 4218q; Acts 1901, p. 292; Hooks v. Kirby, 58 Texas Civ. App., 335 (124 S. W., 156). It is manifest, we think, that the land in controversy was not purchased under the Act of 1901, and its purchase is in no manner affected by that Act. Appellant's assignment of error complaining of the court's finding above mentioned must be sustained.

The trial court found that on November 14, 1898, when Wallis, Landes & Co. and the Beaumont Lumber Company entered into the contract hereinbefore set out at length, each party well knew that the timber would not be cut in five years; that Wallis, Landes & Co. when they acquired the timber agreed by said contract to acquire the land within five years, and thus the purchaser of the timber was incidentally the purchaser of the land. By the first conclusion of law the court concluded that as to Wallis, Landes & Co. and the Beaumont Lumber Company, the purchaser of the timber was in fact a purchaser of the land at the very day the timber was purchased, and that the land could be sold to actual settlers only. This finding and the conclusion are assailed by appellant's' second, third and fourth assignments.

It appears that the foregoing findings of law and fact are the court's deductions from the contract of November 14, 1898, and have no other support. There was no evidence that Wallis, Landes & Co. and Beaumont Lumber Company, or either of them, at the date of the purchase of the timber from the State, knew or contemplated that said timber would not be cut within five years; and if

they in fact had such knowledge, or had such contemplation existed, it would not have converted the purchase of the timber into a purchase of the land, or in any manner affected or changed the contract of purchase of the timber.  He who is given the right to purchase the land under article 4218q is the purchaser of the timber, or his vendee—not the purchaser or his vendee who believed or contemplated at the date of the purchase that the timber would be removed in the five years.  If he is the purchaser of the timber, or his vendee, he has the qualification prescribed by the statute for a purchaser of the land, regardless of his expectations and contemplations at the date of the purchase of the timber.  It has been held by this court that the purchaser of the timber need not be an actual settler, and that holding is still adhered to.  Hooks v. Kirby, 58 Texas Civ. App., 335 (124 S. W., 156).  The assignments are sustained.

The court found that the purchase of the property in controversy was made by Wallis, Landes & Co. for and on account of the Beaumont Lumber Company and, in effect, a purchase by the lumber company, and concluded therefrom as a matter of law that the purchase of the timber by Wallis, Landes & Co. for the lumber company was a fraud on the State; that the Commissioner of the General Land Office was without authority to sell, directly, or indirectly, timbered land to anyone but an actual settler, and that the conveyance of said timber and patent to said land is absolutely void and may be attacked by anyone collaterally at any time, and that the title of the timber and land is in the State.  The court further found that the sale of the timber by the State to Wallis, Landes & Co. was simulated and was the result of collusion between said firm and the lumber company to acquire the land and timber without settling thereon; that the law as amended in 1901, under which the land was bought, prohibited a sale to them, and no title to the land passed by said sale to Wallis, Landes & Co. in October, 1903.

As before shown, the timber on the land in controversy was purchased in November, 1898, under the Acts of 1895 as amended in 1897.  The timber not having been cut and removed in October, 1903, the land was purchased under the same Acts by virtue of the rights acquired when the timber was purchased.  The Acts in question put no restriction upon the purchase of the timber, either as to character of purchase or amount of timber purchased.  The character of purchaser being in no manner limited, any person, natural or artificial, was qualified to purchase, and anyone purchasing, or his vendees, could, within the prescribed time and so long as the timber remained uncut, acquire the land on which the timber stood upon payment of the amount prescribed by the Acts; so that under the Acts any purchaser could acquire any amount of timber and, within a given time, the land on which it stood.  Under the Acts in question no one, it appears, could purchase the land on which the timber had been sold and still stood until the expiration of five years from the date of the sale of the timber, except the purchaser of the timber or his vendee.  The sale of the timber withdrew the land from the sale to the actual settler during the five years, and for this period it could be sold only to such owner of the timber.  It was a

provision intended to reunite the ownership of land and timber. The only qualification of such purchaser was that he should be the purchaser of the timber, or his vendee; it was wholly immaterial whether he was or was not a settler. To disqualify any purchaser of the timber or his vendee, because not a settler or because a corporation, is to read into the statute a limitation which it does not contain and which its language does not warrant. It is evident from the structure of this statute that section 4218q (Acts 1895-1897) contains the entire law on the subject of the right of purchaser of the timber to purchase the land, and that the other provisions of the Act, fixing the terms and conditions on which lands can be sold, in no manner qualify it. It is to be observed that the language used in the last sentence of this article, "under the provisions of this Act," has reference to the purchase of the timber, not to the purchase of the land. In other words, the right given to purchase the land is given to the purchaser of the timber under this Act, and not to the purchaser of timber under any former law. This is not only the natural construction and evident meaning of the language when this section is taken alone, but is made apparent by other portions of the Act. If the sentence is construed to mean that the purchaser or his vendee .may purchase the land under the provisions of this Act, it is not possible to give any effect to the provision. The Act divides the land into agricultural, grazing and timbered, and except by article 4218q makes no provision for the sale of land of any other character. The land on which the timber has been sold and still stands is not in any of the designated classes. It, of course, is not agricultural or grazing; and timber land, within this Act, includes not only the land, but the timber. Timbered land can not be sold in amounts exceeding four sections, nor for less than its actual value. Timber can be sold without limit in amount, and the quantity of land that can be acquired under article 4218q is limited only by the quantity of standing timber purchased measured by acres. To apply the "provisions" of this Act to the purchase of land on which the timber still stood under article 4218q, leads to absurdity. To disregard all the provisions except the provision requiring settlement, and require that, is to disregard the language and evident purpose of the Act, and without warrant of language or reason write into this law what the Legislature did not see proper to write into it. It is the manifest purpose of the Act to permit the timber to be sold without limitation to any purchaser, natural person or corporation, and to permit, within five years, such purchaser or his vendee, the timber not being removed, to acquire the land for two dollars per acre. That this law contemplated the sale of land under some circumstances to other than settlers is shown on the face of this Act; in several articles it provides for the sale to actual settlers only, *except where otherwise* provided by law.

This Act of 1901, which seems to have controlled the trial judge, changed the law theretofore in force as set out in article 4218q, by substituting for the concluding sentence of said article, which is as follows: "Provided, that the purchaser or his vendee of any such timber shall have the right to purchase the land upon which such

timber so purchased is situated at two dollars per acre cash at any time before the expiration of five years from date of purchase of timber under the provisions of this chapter" the following: "Provided, that upon the application of the purchaser or his vendee of any such timber, made within five years from the purchase of such timber, the Commissioner of the General Land Office shall have said land classified at the expense of the owner of said timber as agricultural or grazing land, and the owner of said timber shall have the right to purchase said land at the valuation fixed by said Commissioner on the same terms and conditions as other lands of like classification are sold under the provisions of this Act." Acts 1901, p. 292.

This provision requires the disregarding of the timber on the land and the classifying thereof according to the nature of the ground itself, apart from the timber, into agricultural or grazing land; and permits its sale to the purchaser of the timber or his vendee on the same terms and conditions as other lands of like classification are sold under the provisions of this Act. This is a very distinct and radical departure from the laws of 1895 and 1897. Under those, the purchaser of the timber could purchase the land because owner of the timber which stood upon it, without classification. The land was not classified and was not purchased as agricultural or grazing land, but as timbered land upon which the timber had been sold but not removed, and regardless of its value. Under the law of 1901 the purchaser of the timber could not purchase the land simply as owner of the timber, but he must purchase it as classified agricultural or grazing land and upon the same conditions as any other purchaser of land of like class. As owner of the timber he had preference to purchase the land during the period he had the right to remove the timber.

Previous Acts had provided for classification of the land after the timber was removed and the sale of that land just as any other land of like classification. The Act of 1901 not only does this, but anticipates the removal of the timber and deals with the land having the timber still upon it as though it were removed, and classifies and sells it as it would do when the timber was removed, but during the life of the timber contract to the owner of the timber only. In other words, the Act of 1901 provided for placing land on which the timber had been sold in either the agricultural or grazing class, and making the law applicable to such land apply, giving the owner of the timber a preference in the purchase. The Acts of 1895 and 1897 took the land out of the several classes provided for by the statutes and gave the owner of the timber alone the right of purchase. When the timber owner's rights expired, the land had to be returned to one of the recognized classes of the statute before it could be sold, and until returned to one of those classes the law applicable to such class did not apply, but article 4218q remained the whole law on the subject.

In the case of Lufkin Land & Lumber Company v. Terrell, 100 Texas, 406, cited by the court in his conclusions of law, the court construed the law of 1901 and it seems to us correctly, but the court used one expression which seems to have misled the court below. It

says: "Ever since the Act of 1895, at least, the steady policy of the Legislature has been to sell the public free school and asylum lands to actual settlers. The emphatic declaration of section 5 of that Act is that such lands shall be subject to sale, but to actual settlers only."

The court was here dealing with a purchase of timber and land made under the Act of 1901, and did not have occasion to examine critically any previous law. Under this Act, land on which the timber had been sold could be sold only as agricultural or pasture land. Consequently the language used should be taken to apply to such lands. That these were the lands in mind is shown by the concluding sentence of this opinion, which is: "Besides, we think, it may be said broadly that it was never intended that any land subject to classification as agricultural or grazing land should ever be sold to a corporation either directly or indirectly."

When the language used is confined to the subject with reference to which it was sued it is accurate, but taking it in its most general sense and standing alone it would be a little broad, for by the Act of 1897 it was provided that the lands should be classified as agricultural, timbered or grazing, and: "Such land shall be subject to sale, but to actual settlers only, except where otherwise provided by law." (Art. 4218f, Sayles' Statutes.) And under article 4218q, hereinbefore mentioned, being section 16 of the Act of 1895, any purchaser of timber under that Act was permitted to purchase the land regardless of conditions of settlement or otherwise, except the payment of the price in cash.

It is manifest, as we have hereinbefore shown, that the Act of 1901 in no manner affected the transaction under consideration, and that said Act is radically different in its terms and meaning from the law existing prior to its passage, and under which the timber and land in controversy was acquired. It follows therefore that, even granting that the effect of the transaction between Wallis, Landes & Co. and the Beaumont Lumber Company was a sale of the timber and, afterwards, the land to the latter, the sale was authorized by said Acts, and the conveyance and patent vested the title of the State in the purchaser; and it being shown that appellant now has the title vested by the patent in Wallis, Landes & Co. he should have prevailed in this suit.

But even if it should be held that the Beaumont Lumber Company was the real purchaser of the timber and land and, being a corporation, it had no right under the law to purchase either, and that in obtaining title thereto in the manner shown by the evidence it acted in collusion with Wallis, Landes & Co., and that this was a fraud upon the State, we still think that the appellant should have prevailed, because the title of the purchaser so acquired is not open to attack except by the State or by someone having a prior equitable or legal right. Logan v. Curry, 95 Texas, 670; Thomson v. Hubbard, 69 S. W., 649; McLeary v. Dawson, 87 Texas, 535; Russell v. Texas & P. Ry., 68 Texas, 652. And this is true regardless of whether appellant at the time of his purchase had knowledge of such collusion, and is also true regardless of whether Wallis, Landes &

Co. owned the timber at the time of the filing of their application for a patent for the land upon which the timber was standing or at the time of the issuance of the patent.

Appellees present a cross-assignment in which they urge that the court erred in not rendering judgment for them for the land involved in this suit on their affirmative plea. They contend that having entered upon the land under the Act of 1889 and fixed their rights at that time, their rights became contractual and that law fixed their status and is the full measure of their rights and liability which no subsequent legislation can modify or change, but as to them the land in controversy remains under the Act of 1889 as though there had been no subsequent legislation affecting its sale by the State.

Appellees in 1891 entered upon the land and began the construction of improvements thereon with the intention of purchasing from the State as actual settlers. Since that time appellees have continuously resided on the land and made improvements to the value of $2000. At the time of their entry the Act of 1889 was in force. The eighth section of that Act provides that, "Any *bona fide* actual settler who may reside on any part of the lands, the sale of which is authorized by this Act, at the time this Act may go into effect, shall have the right for a period of six months after the same shall have been appraised to purchase such quantity of land as may be limited by this Act, to include his improvements, upon complying with the provisions of this Act regulating sales as in other cases," etc.

The fifth section provides: "Whenever any portion of said land has been classified to the satisfaction of the Commissioner under the provisions of this Act or former laws, such land shall be subject to sale, but to actual settlers only, and in quantities of not less than eighty acres and in multiples thereof, nor more than one section containing six hundred and forty acres. . . ."

The land was appraised and classified by the Commissioner on January 18, 1890, as timbered land, and a copy of the appraisement and classification was filed in the office of the county clerk of Jasper County January 21, 1890, but by omission of the clerk was not recorded in a book required by law to be kept by him for that purpose. At no time have the appellees applied to the Commissioner of the General Land Office to purchase the land. The Act of 1895 provided that any *bona fide* actual settler who may reside on any part of the lands, the sale of which was authorized by that Act, at the time the Act went into effect, shall have the prior right for a period of ninety days after the Act went into effect or after said lands shall have been placed on the market, to purchase, etc. The Act of 1897 repeals the aforesaid preference clause of the Act of 1895. When appellant's rights were fixed under the transaction involved in this suit, there was no preference right given the settler and none had existed since the repeal of the Act of 1897, as above mentioned. The preference right given by the aforesaid Acts in no way constituted a contract between the settler and the State and created no vested right after the period of preference had expired, unless the settler took such further steps as the law required in order to bring about a purchase by him. The statute pointed out the way that a contract

would be made with the State, and the settler upon the land was simply a designation of the person qualified to purchase it, and the right conferred on him was the right to purchase under certain conditions in preference to other qualified purchasers. Never having taken the steps prescribed by law to purchase the land during the time their preference rights existed, they can not now, to defeat appellant's title, assert the rights they once had but have now lost by nonaction. When the land was appraised and classified by the Commissioner of the General Land Office it at once became subject to sale. The Commissioner performed his duty when he classified the land and notified the county clerk thereof. The fact that the clerk omitted to record the list in a book provided for that purpose would not continue such preference right that appellees may have had to purchase the land, or excuse their failure to take the necessary steps to purchase the land while their preference right existed. The cross-assignment is overruled.

We have been greatly aided in the preparation of this opinion by the very able briefs of the counsel for appellant.

As in our opinion no judgment other than one in favor of the appellant should have been rendered under the undisputed facts of this case, the judgment of the court below will be reversed and judgment is here rendered for appellant for the land in controversy.

*Reversed and rendered.*

Writ of error refused.