**THEISEN et al. v. STANOLIND OIL & GAS CO. et al.**

No. 4473.

Court of Civil Appeals of Texas. Eighth District.

Oct. 31, 1946.

Rehearing Denied Dec. 12, 1946.

Wagstaff, Harrell, Wagstaff & Alvis and Scarborough, Yates & Scarborough, all of Abilene, for appellants.

Don Emery, R. L. Foster, R. B. F. Hummer, A. M. Ebright, and Hayes McCoy, all of Bartlesville, Okl., Grover Sellers, Atty. Gen., Wm. J. Fanning, Donald Gay, and Chester Allison, Asst. Attys. Gen., W. B. Wagner and J. P. Adoue, both of Houston, Whitaker, Turpin, Kerr, Smith & Brooks, of Midland, Blalock, Blalock, Lohman & Blalock, of Marshall, H. S. Garrett and W. N. Sands, both of Ft. Worth, H. J. Patterson and Cecil C. Cammack, both of Houston, David W. Stephens and Wm. L. Wise, both of Ft. Worth, Warren M. Sparks and E. H. Foster, both of Amarillo, Burney Braly, G. R. Pate, and John A. Braly, all of Ft. Worth, Wm. N. Bonner, of Houston, Neill & Lewis, of San Angelo, H. A. Burnett, of Sinton, Stubbeman, McRae & Sealy and Irby L. Dyer, all of Midland, J. H. Crocker, of Tulsa, Okl., A. M. Gee, of Findlay, Ohio, R. H. Wills, of Tulsa, Okl., John E. Green, of Houston, Richard A. Grant, of Los Angeles, Cal., Nathan Scarritt, of Enid, Okl., W. P. Z. German and James Marberry, both of Tulsa, Okl., John L. Camp and Clayton L. Orn, both of Houston, Turner, Rodgers & Winn, of Dallas, Carlton R. Winn and George S. Terry, both of Dallas, and Davis & Allen, of El Dorado, Ark., for appellees.

Scott Gaines, of Austin (Donald Campbell and L. A. Thompson, Jr., both of Tulsa, Okl., of counsel), amicus curiæ.

SUTTON, Justice.

This is an appeal from the District Court of Andrews County.

G. W. Theisen and I. V. Daniels, who will be called plaintiffs, sued the Stanolind Oil & Gas Company and a large number of other interested parties, all of whom will be referred to as defendants, to establish a vacancy claimed by the plaintiffs to exist between the west and south lines of Block 12, University of Texas, and the adjoining Public School Blocks, and between University Blocks 13 and 14 and the Public School Blocks north and west of such University Blocks and between the most southerly north line of University Block 14, and the Public School Blocks surrounding Shafter's Lake in Andrews County. The claimed vacant areas are shown on the map hereinafter attached. The suit was brought under the provisions of Article 5421c, Vernon's Civil Statutes. The State intervened.

The trial was to a jury, but at the conclusion of the evidence all parties conceded there was no issue for the jury and both plaintiffs and defendants moved for an instructed verdict. The verdict was instructed for the defendants and judgment rendered accordingly that no vacancy exists, from which judgment the two plaintiffs alone have appealed.

No questions are presented on the pleadings nor is any issue raised as to any failure on the part of the plaintiffs to fully comply with the law applicable in such cases and it will serve no purpose to make a statement of the pleadings.

The State occupies a novel position in the case in that it can neither win nor lose. If the vacancy be established the royalty proceeds are merely shifted from one pocket to another—from the University Fund to the Public School Fund.

The record is very voluminous and the briefs in the aggregate are lengthy, presenting numerous points and counter points, and likewise much might be written on the case but would serve no useful purpose, and in our view of the case it boils down to one primary question—the controlling location of the University Blocks on the ground, and two or three corollary issues.

The position of the plaintiffs is the University Blocks are properly located by construction, course and distance, from a rock designated as the "P" rock set for the Northwest corner of Section 12, Block 42, Tsp. 2 North, Gunter & Munson, Maddox Bros. and Anderson by virtue of an application of the field notes for the Gunter & Munson, Maddox Bros. and Anderson and

W. B. Munson made in that area, but abandoned, and what is known as the Dennis Corwin map and field notes. The defendants on the contrary say the blocks are properly located according to a survey made in 1900 by Woods and Boone. The position of the blocks under each theory is illustrated on a map made by J. A. Simpson, a Licensed State Surveyor, designated by the Land Commissioner to make a survey on the vacancy applications of plaintiff, which is here reproduced with some color and figures added to make the situation a little more apparent.

The blocks here involved and many others came out of what is known as the Texas & Pacific R. R. Reservation. A description and history of that Reservation and of the Corwin map and field notes and the Gunter & Munson, Maddox Bros. and Anderson, etc. field notes may be found in the opinion of this Court in the case of State v. Flick, Tex.Civ.App., 180 S.W.2d 371, and the same will not here be repeated in detail. A reproduction of the Corwin map is likewise found in the Flick case.

By an act of the Legislature effective July 14, 1879, Gen.Laws 1879, Sp.Sess. c. 52, the unappropriated area of the T & P Reservation was offered for sale. It required the applicant to have the lands he desired to purchase surveyed by an authorized surveyor and the field notes returned to the Land Office, and the payment of the purchase price of 50¢ per acre within sixty days from the date the field notes were so filed. If the purchase price was not so paid the application was forfeited and the lands were subject to sale to any other purchaser. It was under this act the Gunter-Munson-Anderson surveys were made, forfeited and abandoned.

April 10, 1883, the Legislature allocated one million acres of land to the permanent fund of the University of Texas and a like acreage to the Public School Fund, and provided for the designation and survey of the lands under the direction of the Land Commissioner. Vernon's Ann.Civ.St. art. 2590. The record discloses an anxious desire of the Board of Regents to have the University lands designated in order that the benefits to accrue therefrom might be available. Dennis Corwin, a surveyor, was engaged by the Board of Regents, and we think with the consent and approval of the Commissioner, to inspect, report on and make recommendations concerning the lands allocated to the University. After a considerable lapse of time and on the urgent request of the Commissioner, Corwin on January 12, 1885, filed in the land office the so-called Corwin map and field notes, a typical specimen of which are likewise set out in the Flick opinion. There were in all 77 blocks, some of which were set aside to the University and some to the Public Schools. Some of the designations were not accepted but were changed from the University to the Public Schools, and thereafter the map prepared and filed showing the designations after the changes.

The area embraced in Blocks 13 and 14 and a part of 12 had been contained in the abandoned W. B. Munson field notes.

The Corwin map, we take it as conceded, is an accepted record of the Land Office and the University Blocks depicted on it regarded as appropriated lands. Likewise the unsurveyed Public School Lands were allotted thereby. It is likewise conceded, we think, and so held in the Flick case that the Corwin work was office work and his blocks were never by him located and identified on the ground. Many titles and rights have been acquired and fixed on the basis of the map. Between 1885 and 1900 numerous grazing leases were made of the University and Public School Lands according to the Corwin allotments and designations.

Subsequent to this work some uncertainty arose as to the status of the Public School Lands and other lands belonging to the State. The Legislature by the Act, March 2, 1899, Gen.Laws 1899, c. 16, authorized an investigation and ascertainment of the status of the Public School Lands and based upon the report thereof made by the Commissioner passed the Act of February 23, 1900. Vernon's Ann.Civ.St. art. 5416. Under this Act all the remaining unappropriated public domain was set aside to the Public School Fund. Under the provisions of the Act the Land Commissioner was authorized and directed to "partition" survey, sectionize for the purposes of sale, and return to the Land Office the field notes of such lands. Col. D. S. Woods, Daniel Boone and R. E. Estes were engaged to perform the task.

At this time University Blocks 12, 13 and 14 had been selected and set apart to the University Fund in accordance with the Corwin map. But, as heretofore indicated, the boundaries thereof had not been marked and fixed upon the ground. They were projected into a vast area of unsurveyed public domain. No ground work had been done west of Block 42, Tsp. 2 North and the entire area other than the University Blocks was shown on the maps of Andrews County

of 1887, 1895 and 1900, to be unappropriated public domain. These University blocks as shown on Corwin's map, then had but a relative position, or as said in Gulf Oil Corporation v. Outlaw, 136 Tex. 281, 150 S. W.2d 777, a theoretical position, as distinguished from an actual or fixed position on the ground. Woods, Boone and Estes were familiar with this map position and its relation to the area. They began their survey of 1900 at the Texas-New Mexico border, commencing at the southeast corner of New Mexico and proceeded northward. In the words of Mr. Estes, when they reached the University Blocks they "left a hole for them". The University Blocks were run out and their outside boundaries marked with iron pipe and mesquite stakes. Typical markings are: "1½" I.P. mkd. N. W.B. 12 at N.W. Cor. U.B. 12" ; 2½" I.P. S.W.C. Univ. B. 12; etc. Many of these are admitted to be in place on the ground at this time and are shown on the map produced herein. Frank Friend, a surveyor, was employed and directed under the provisions of an Act of March 29, 1929, Art. 2603a, Vernon's Statutes, to survey the University lands, including Blocks 12, 13 and 14. He did so, finding the lines as marked on the ground by Woods, Boone and Estes, he adopted the locations and marked them anew and surveyed the interior lines of the blocks and marked them, setting concrete monuments every two miles. On top of the concrete monuments are metal plates upon which are designated the adjoining blocks and surveys, or adjoining surveys as the case may be, by letters and figures. We copy one, to illustrate, as found in one of the briefs, as follows:

|  | B | 49 |
| SE26 |  | SW25 |
|  | PS | L |
|  | B | 12 |
| NE3 |  | NW2 |
|  | UT | L |

The Woods-Boone and Friend Field Notes were duly returned, approved and filed in the Land Office.

■■ The defendants contend the location as made on the ground successively by Woods and Boone and Friend is proper, official and controlling. We concur in this view for two reasons primarily. First, when the Blocks were first marked on the ground by Woods and Boone in 1900 the entire area belonged to the State of Texas notwithstanding it stood by name in the University and Public School Funds. The lands designated as belonging to each fund had not been surveyed and identified on the ground. The Legislature had the authority to cause the lands to be "partitioned," that is to say, separated, set apart and identified on the ground. Galveston, H. & S. A. Ry. Co. v. State, 77 Tex. 367, 12 S.W. 988, 13 S.W. 619; Hogue v. Baker, 92 Tex. 58, 45 S.W. 1004. In our opinion it is immaterial so far as these plaintiffs are concerned whether the location as ultimately made on the ground, when made under the facts of this case, was properly made, erroneously made or the position purposely altered, the State only could complain in the name of the funds involved and the State only could correct it. At that time no private rights had intervened. Those who administer the funds involved have not yet felt aggrieved and have made no complaint and make none here. On the contrary they have each accepted the location as correct and have sold and conveyed titles and valuable oil rights and interests in accordance with the survey and location as made, which titles and interests are held by defendants in this case.

■ Secondly, as heretofore pointed out, the University blocks had not theretofore been actually located and identified on the ground. It was essential that Woods and Boone do that because they could not otherwise proceed with their duty and task of surveying and fixing on the ground the Public School Blocks and sectionize them as they were required to do. The location of such blocks was then only relative or theoretical and when made certain under lawful authority they became official and original. Gulf v. Outlaw, supra; State v. Ohio Oil Co., Tex.Civ.App., 173 S.W.2d 470, 478 (par. 9).

■ There is another reason why the plaintiffs may not prevail on this case. The effect of what plaintiffs say in the position

they take is not that there has been no survey at all of the areas involved, but that there has been an erroneous survey thereof. The statute under which they proceed, Art. 5421c, Vernon's Statutes, makes subject to lease "vacant and unsurveyed land." In Sec. 3 "unsurveyed lands" are defined to be "all areas not included in surveys on file in the General Land Office, or surveys delineated on the maps thereof." Section 6, insofar as it applies to the situation here, says: "Vacancy," * * * means an area of unsurveyed school land not in conflict on the ground with lands previously titled, awarded, or sold, which has not been listed on the records of the Land Office as school lands * * *." The lands involved here have been "surveyed" since the exterior boundaries of the blocks were run out and marked by Woods and Boone, and since the Friend survey in 1930 have been surveyed and located according to the exterior boundaries fixed by Woods and Boone, and the interior boundaries defined and marked by Friend, and have since the 1900 survey been delineated on the official maps and since the Friend survey have been included in surveys on file in the General Land Office. Such was the situation when plaintiffs made their applications. Hence, the lands were at the time plaintiffs sought to fix their rights surveyed lands. Spring v. Meco Production Co., Tex.Civ.App., 134 S.W.2d 828.

█ The undisputed facts are the claimed vacant areas are in conflict with lands previously awarded, sold and titled in the adjoining public school blocks and with leases acquired in the University Blocks from the State based upon surveys actually made on the ground, to-wit, the Woods-Boone and Friend surveys, and, therefore, can not be vacant. Spring v. Meco, supra; Short v. W. T. Carter & Bros., 133 Tex. 202, 126 S.W.2d 953; Theisen v. Robison, 117 Tex. 489, 8 S.W.2d 646; Sawyer v. Robison, 114 Tex. 437, 268 S.W. 151. And the leases here held by certain of the defendants may not be questioned by these plaintiffs. Sawyer v. Robison, supra; Fitzgerald v. Robison, 110 Tex. 468, 220 S.W. 768; Wing v. Dunn, 103 Tex. 393, 128 S.W. 108 (same case 60 Tex.Civ.App. 16, 127 S.W. 1101) and to which might be added other cases. The Public School Fund, if the survey be erroneous, is probably not hurt, because it gains on the one side what it may have lost on the other, and to that extent is much better off than private adjoining owners who may in error fix a boundary in accordance with an erroneous survey, and about which certainly no third party could be heard to complain without prior fixed rights.

Plaintiffs ask us to here affirm the opinion in the Flick case and say if we do then they must prevail under an application of the principles applied there. Of course, the opinion in the Flick case speaks for itself. There was in fact a different state of facts presented there. There had been no actual survey on the ground of the University Blocks there involved and they had to be located according to and by an application of the Corwin map to the known areas actually surveyed on the ground. Those boundaries had to be fixed according to the best evidence before us in the case.

It is our opinion the judgment of the trial court is correct and it is accordingly affirmed.