**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Oscar B. GOFORTH, Appellee.**

No. 3338.

Court of Civil Appeals of Texas.

Eastland.

Nov. 1, 1957.

Rehearing Denied Dec. 6, 1957.

Leachman, Gardere, Akin & Porter, Dallas, for appellant.

Peery & Wilson, Wichita Falls, for appellee.

COLLINGS, Justice.

This is a workmen's compensation suit by Oscar B. Goforth against Texas Employers' Insurance Association, the compensation insurance carrier for plaintiff's employer. Plaintiff alleged that on November 18, 1955, while engaged in the course of his employment with his employer he sustained disabling injuries to his back by reason of which he became totally disabled within the meaning of the Texas Workmen's Compensation Act. Plaintiff sought to recover the benefits provided by the act. It was found by the jury that plaintiff suffered ten weeks total disability and thereafter 55 percent permanent partial disability. The court granted plaintiff's motion and rendered judgment against the defendant insurance company for 300 weeks partial incapacity at $25 a week. Texas Employers' Insurance Association has brought this appeal.

■ It is contended in appellant's first and second points that there was no evidence, or in any event, that the evidence was not sufficient to support the finding of the jury to the effect that appellee Oscar Goforth sustained 55 percent permanent partial incapacity. Appellant urges that there can be no partial incapacity because no decrease was shown in appellee's weekly wage earning capacity after the injury as compared to his weekly wages before the injury. Appellant points out that about six weeks after November 18, 1955, when appellee sustained the injury to his back, he obtained employment as a driller at an increase of 54¢ an hour over what he had been earning at the time of his injury, as a roughneck; that appellee's wages at the time of his injury were $1.66 per hour and that he began working about six weeks later at $2.20 per hour; that during the period from January through the first part of October, 1956, appellee earned by his labor $2,601.43, or about $300 per month, in spite of a two month shut down during April and May.

Appellant's contention in these points is not well taken. There is ample evidence to the effect that Goforth, while working in the course of his employment for the Hunter estate on November 18, 1955, sustained serious injury to his back and by reason thereof became permanently disabled from doing hard manual labor. Goforth at the time of his injury was forty-two years of age, was an oil field worker and had been doing work both as a roughneck and as a driller. The evidence indicates that the work of a roughneck is hard manual labor and heavier work than that of a driller; that a driller does not have to do heavy work except while the rig is being made ready for drilling; that appellee was and is able to do part of the work of a driller, but not able to do the more strenuous work of a roughneck; that appellee's ability to secure employment as a driller is impaired because he is unable to do the hard work which a

driller is occasionally required to do, even though his former employers, out of loyalty to him, have so far permitted him to continue to work for them as a driller in spite of his inability to do a part of the work. Under the workmen's compensation act, compensation is paid for diminution of earning capacity, not for loss of earnings, and the fact that an injured employee works and earns money after his injury is generally not conclusive on the issue of his capacity to obtain and retain employment. As stated by Judge Norvell, in Texas Employers' Ins. Ass'n v. Taylor, Tex.Civ. App., 276 S.W.2d 901, 903:

" * * * a recovery for permanent partial disability may be sustained, notwithstanding the fact that the employee may have worked after his injury and for a time received substantially the same wages as were paid to him prior to the injury. The peculiar facts of each case must control the judgment therein * * *."

See also Texas Employers' Ins. Ass'n v. Evers, Tex.Civ.App., 242 S.W.2d 906; Commercial Casualty Insurance Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805 (Writ Ref.) and cases cited therein. The evidence in this case, as above summarized, in our opinion amply supports the finding of the jury that appellee sustained fifty-five percent partial disability as a result of the injury he suffered on November 18, 1955.

■ Special issue number 14 of the court's charge concerning the percentage of appellee's partial incapacity and the answer of the jury thereto were as follows:

"Special Issue No. 14: Find from a preponderance of the evidence the percentage of such partial disability, if any, inquired about in Special Issue No. 10. Answer by giving the percentage in numbers, if any. Answer: 55%"

Appellant's third, four, fifth and sixth points complain of the action of the court in overruling objections to the submission of special issue number fourteen and in refusing to submit instead appellant's three series of requested special issues or a total of nine issues inquiring as to the extent of the reduction, if any, of appellee's wage earning capacity after the injury as compared to his earnings before the injury. It is urged by appellant that the injury complained of by appellee is a general injury and under the statute covering partial disability the law requires a determination by the jury as to whether or not there has been any reduction in the average weekly wage earning capacity of the plaintiff as compared with his average weekly wage earning capacity thereafter.

■ Numerous cases are authority for the proposition that a trial court will not be held in error for inquiring of the jury concerning the claimant's percentage of partial disability as a result of injury rather than to inquire about the extent of the reduction of his wage earning capacity after the injury. Appellant's points three, four, five and six are overruled. Traders & General Ins. Co. v. Robinson, Tex.Civ.App., 222 S.W.2d 266 (Writ Ref.); Texas Employers' Ins. Ass'n v. Spivey, Tex.Civ.App., 231 S.W. 2d 760 (Ref. NRE); American General Ins. Co. v. Bailey, Tex.Civ.App., 287 S.W.2d 290 (Ref. NRE); Consolidated Casualty Insurance Company v. Newman, Tex.Civ. App., 300 S.W.2d 160 (Ref. NRE).

■ In appellant's seventh and eighth points it is urged that there was no evidence to support the finding that Billy Joe Lewis worked substantially the whole of the year preceding November 18, 1955, in the same, or neighboring place, to Stonewall County, Texas, and that the court erred in overruling appellant's motion to disregard such finding. The evidence showed that Billy Joe Lewis worked as much as 300 days as a roughneck in the State of Texas during the year immediately preceding appellee's injury; that all of such work, except thirty-two days, was done in Stephens, Callahan and Stonewall Counties. Appellant does not contend that these counties are not neighboring places. The evidence further shows, however, that thirty-two days of such work

was done in East Texas, and appellant urges, as a matter of law, that East Texas is not a neighboring place to Stonewall County, which is in West Texas, and that there remains only 268 days of such work by Billy Joe Lewis in the same or neighboring place to Stonewall County, which is not substantially the whole of a year.

We overrule points seven and eight upon the authority of Commercial Standard Ins. Co. v. Brock, Tex.Civ.App., 167 S.W.2d 281, 289, (Ref.W.M.). In that case the claimant, whose work was to aid in the removal of oil field equipment in large trucks, which was an unusual type of work and extended over a large territory including several states, had not worked in such employment during substantially the whole of the year preceding his accidental injury. No one was engaged in the hauling of such equipment in Lipscomb County, Texas, where the claimant's accidental injury occurred. It was held by the Court of Civil Appeals that an employee who was engaged in similar work and resided in Seminole, Oklahoma, was engaged in such similar work in "a neighboring place" as contemplated by the Workmen's Compensation Act, Vernon's Ann.Civ. St. art. 8309, subd. 2. The record in this case indicates that the oil field workers involved were engaged in work which, like the oil field machinery removing work in the above cited case, was transitory and extended over a large territory. The evidence shows that Goforth was being paid at approximately the same rate per hour for the work he performed as a roughneck that Lewis was being paid for the same type of work and that the wages paid in each of the counties involved were the same. We are unable to see how appellant could be injured by an application of the same liberal rule used in the Brock case in identifying and determining the extent or breadth of "a neighboring place".

■ Appellant's ninth, tenth and eleventh points complain of argument of appellee's attorney, Mr. Kearby Peery, to the jury. The following is the argument complained of and the objections and rulings in connec-

tion therewith. The first argument complained of as set out in appellant's bill of exception No. 1 is:

" 'Now Mr. Porter tells you, "Don't speculate about the evidence." I don't want you to speculate. This man told him back there in June about every man he had worked with before the accident. There is not a line of evidence to contradict Mr. Goforth's story that the only work he has done is light work, and that he has not done any heavy manual labor from the day he got hurt until this time, and he is not going to do any.'

"Thereupon, the attorney for the defendant made the following objection to the Court:

" 'We object to that, because that is a comment upon the failure to bring witnesses over whom we have no control whatsoever. Mr. Peery could have brought these witnesses just as well as we could. They are out of court and we have no control of them and we certainly object to that type of argument. It is prejudicial, and we ask the Court to instruct the jury not to consider that type of argument at all.'

"Thereupon, the Court stated:

" 'It will be sustained. Don't consider it. Go ahead.'

"Thereupon, Mr. Kearby Peery, the attorney for the plaintiff, continued:

"I didn't say, Gentlemen of the jury, they didn't bring anybody herein; I didn't say we didn't have them up here.'

"Thereupon, the attorney for the defendant again objected, stating:

" 'May we have our objection to that type of argument; that's the same line; it's prejudicial.'

"Thereupon the Court stated:

" 'Let's don't go into that. It will be sustained.'

"Thereupon Mr. Kearby Peery, the attorney for plaintiff, stated:

" 'I'll say to you I don't want speculation, and the only evidence you have here that this man has done or has not done manual labor—the only evidence before you is his testimony, the testimony of Oscar Goforth, which Dr. Ledbetter says he is not malingering; he is fair; he is an honest man.'

"Thereupon Mr. Porter again stated:

" 'We object to that argument, Your Honor.' "

Appellee's attorney, Mr. Kearby Peery, also made the following argument to the jury, which is complained of in defendant's bill of exception No. 2:

" 'I wrote Dr. Ledbetter on April 9 and said that we were representing this man and told him that the Industrial Accident Board at Austin, Texas, had to have a report on this man's condition and would he please give me a report, if it was just a copy of the report he sent to the insurance company. I sent an authorization signed by this man, saying, "Give this to my attorneys," and I sent it to him. I said, "Dr. Ledbetter, did you have anything to hide about this condition?" "No, sir." "You didn't send me a report, did you?" He wouldn't give this man, his own patient, wouldn't give his own patient a report of his condition, so I could send it to the Board. How was he with the insurance company? One report? No, three. Did he have anything in those reports that he didn't want Oscar to see or the Board to know about? If he didn't, why wouldn't he send this man a copy? He couldn't get a report from his doctor that does all of his work for insurance companies and is paid by them, who is biased and prejudiced because he is paid by them.'

"The attorney for the defendant then objected as follows:

" 'We object to that, because the evidence shows definitely that he was not biased and prejudiced.'

"Thereupon, the court stated:

" 'That will be sustained.'

"The attorney for the plaintiff, Mr. Peery, then continued:

" 'If you went to a doctor for an injury—I don't care if you were injured in an automobile collision and you had an attorney and said, "Doctor, I want you to tell my lawyer what's wrong with me and what treatment you have given me," and he would tell you the same thing, "I am not going to give it to you; I am going to give it to the insurance company", and * * *'

"Thereupon, the attorney for the defendant objected and stated to the Court as follows:

" 'We object to that, that is asking the jury to put themselves in the place of the plaintiff. At this time we ask that the jury be taken out of the case and a mistrial declared.'

"The Court then stated:

" 'Don't consider that statement, Ladies and Gentlemen for any purpose. The objection will be sustained.' "

Mr. Peery also made the following argument to the jury complained of in defendant's bill of exception No. 3:

" 'Now, when this lawsuit is over, Mr. Porter can go back to Dallas and start trying cases, and maybe I can go to Wichita Falls and try one, but this is the only case that this man has. He is entitled to a fair and equitable hearing, and he can't come back in here in eighteen months from now or two *months* from now and—'

"Thereupon, the attorney for the defendant objected and stated to the Court:

"'We object to that type of argument, because it is asking the jury to speculate. The fact is of the evidence and not in regard to what may happen eighteen months or two years from now. Certainly that type of argument is unfair and prejudicial. We ask the Court to instruct the jury not to consider it and not allow the attorney to continue it.'

"Thereupon, the Court stated:

"'All right, you are so instructed.'

"Thereupon, Mr. Peery, the attorney for the plaintiff, continued:

"'All right, but he can't come back in here, Gentlemen and say that you made a mistake; you *Laides* and Gentlemen made a mistake.'

"Thereupon, the attorney for the defendant stated:

"'I understand the Court instructed counsel not to continue.'

"Thereupon, the Court stated:

"'I thought so.'

"Thereupon, Mr. Peery, the attorney for the plaintiff, stated:

"'Note our exception.'

"The Court then stated:

"'All right.'

"Thereupon, Mr. Peery, the attorney for the plaintiff, continued:

"'As an undue restriction of the right of counsel to argue the evidence in the case, in view of the fact that the doctor for the insurance company has testified here that this man would have to have an operation.'"

▮ To require a reversal of a case because of argument to the jury, the argument must be such that it was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Rules of Civil Procedure, Rules 434 and 503; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

Appellant urges that the argument complained of in its ninth point and its bill of exception number one was an obvious attempt by counsel for appellee to lead the jury to believe that every man appellee worked with before and after the alleged injury, whose names appellee had given appellant in his deposition some time prior to the trial of the case, would corroborate appellee's testimony that he had, after his injury, done only light work. We cannot agree with appellant's contention that the statement of appellee's attorney to the jury to the effect that appellee was not going to do any hard labor was testimony by counsel. Obviously, it was the attorney's version of his client's testimony and was a conclusion supported by the record. Appellee's attorney argued to the jury that there was no testimony to the contrary, and there was no conflict in the record concerning the fact that Goforth could do only light work after his alleged injury. Goforth testified to this fact, appellee's medical witness and even the insurance company's doctor testified that they would not "pass him for hard manual labor". Under this state of the record we are unable to see how the argument complained of could be calculated to injure appellant, or cause the rendition of an improper judgment. If, as urged by appellant, the effect of the argument was to imply that every man that appellee had worked with would, if called as a witness, testify that appellee had done only light work after the injury, it would add nothing to appellee's case, but only corroborate the uncontradicted evidence. The argument complained of did not under the circumstances constitute reversible error, and particularly so, in view of the fact that the trial court instructed the jury not to consider same. Texas Employers' Ins. Ass'n v. Crow, Tex.Civ.App., 218 S.W.2d 230, (Affirmed) 148 Tex. 113, 221 S.W.2d 235, 10 A.L.R.2d 913; Hughes v. Belman, Tex.Civ.App., 239 S.W.2d 717 (Ref.NRE).

■ The argument complained of in appellant's bill of exception number two, as brought forward in its tenth point, referred to the fact that appellant's doctor, who had treated appellee after the alleged injury, did not comply with the request of appellee's attorney for a report on appellee's condition, but did make three reports to the insurance company. Appellee's attorney further argued to the jury that the doctor was biased and prejudiced because he was paid by the insurance company. Appellant's objection to this argument was that "the evidence shows that the doctor was not biased and prejudiced". The evidence shows that the doctor refused to furnish appellee's attorney with a report on appellee's condition. Appellee's attorney had the right to discuss the evidence and to urge any reasonable inference or conclusion therefrom. It was not unreasonable to infer that the company doctor was biased because he was paid by the company and that he had refused for that reason to furnish appellee's attorney with a report of his condition. The argument, in our opinion did not constitute reversible error. Texas Employers' Ins. Ass'n v. Crain, Tex.Civ.App., 259 S.W. 2d 905 (Ref.NRE).

■ We also hold that the argument of appellee's attorney suggesting, in effect, if it did, that the jury place itself in appellee's shoes by stating a hypothetical situation where a company doctor, to whom they had gone for treatment, refused to give a report to their lawyer but did make a report to the insurance company, was likewise not reversible error in view of the fact that the court instructed the jury not to consider the argument. The argument was not of such a prejudicial nature that the harmful effect could not be removed by the instruction given by the court. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855.

■ We overrule appellant's eleventh point which brings forward its bill of exception number three complaining of argument by appellee's attorney urging, in effect that appellee had only one case and could not come back in eighteen months with another one, as both attorneys might be able to do. By this argument counsel was only urging the jury to give his client "a fair and equitable hearing". His client was entitled to such a hearing. It was not reversible error to state to the jury, in that connection, that appellee had only one case. Benefit Ass'n of Railroad Employees v. Dahn, Tex.Civ.App., 272 S.W.2d 762, 763, 765.

■ We overrule appellant's twelfth point urging that the court erred in refusing to grant its motion for a new trial because of the combined prejudicial effect of all of the above arguments by appellee's attorney. The careful trial court through an abundance of caution sustained objections to all of the foregoing arguments and instructed the jury not to consider them. The arguments complained of, considered separately and as a whole, are not of such an inflammatory nature that the prejudicial effect thereof, if any, could not be removed by the instruction given by the court not to consider same.

Special issue number two of the court's charge was as follows:

"Do you find from a preponderance of the evidence that the plaintiff sustained an injury on or about the 18th of November, 1955?"

Appellant urges, in effect, in its thirteenth point that special issue number two was objectionable because it did not confine the jury to the specific injuries alleged in appellee's petition and supported by the evidence, and that the court erred in overruling its objection thereto. This point is overruled. Appellee, as plaintiff, relied upon a general injury as a basis for recovery. It has been held by our Supreme Court that in such cases it is sufficient to submit to the jury the issue of whether the claimant sustained an accidental injury to his body, and that it is not necessary for the issue or the

jury finding to show the manner in which the injury was sustained. Southern Underwriters v. Boswell, 138 Tex. 255, 260–262, 158 S.W.2d 280.

We have carefully examined all points urged by appellant and find no reversible error. The judgment of the trial court is affirmed.