Solomon A. MURO, Appellant,

v.

HOUSTON FIRE & CASUALTY INSURANCE COMPANY, Appellee.

No. 13502.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 30, 1959.

Rehearing Denied Oct. 28, 1959.

Further Rehearing Denied Nov. 25, 1959.

See also 310 S.W.2d 420.

Putman & Putman, San Antonio, for appellant.

Carl Wright Johnson, Edw. P. Fahey, San Antonio, for appellee.

POPE, Justice.

This is a workman's compensation case. The main point is whether the trial court correctly held that no evidence supports jury findings of total and permanent incapacity to Solomon Muro's back. Plaintiff claimed and obtained jury findings for both a general injury and a specific foot injury. Muro moved for judgment for the general injury, but the trial court rendered judgment notwithstanding the verdict.

Muro fell from a scaffold on January 28, 1955. The jury found that he sustained an accidental injury to his back which pro-duced an incapacity to work, and that the incapacity was total and permanent. The trial court disregarded those findings, except the one that Muro sustained an accidental injury to his back when he fell. The jury also found that Muro sustained an accidental injury to his left foot which was the producing cause of the loss of use of his foot, and that the loss was total and permanent. The court also disregarded the findings that the total loss of use of the foot was permanent. The court then made original findings that Muro suffered six months' total temporary loss of use of his left foot, followed by thirty per cent partial permanent loss of use of the foot, and rendered judgment accordingly.

We must determine whether there is evidence, more than a scintilla, which will support the findings of a general injury to Muro's back. "No evidence" presents a question of law, and the measuring rod requires us to view the evidence most favorably in support of the findings. In our statement of the facts we need only concern ourselves with the evidence which supports the jury's verdict. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682. When we do this, we conclude that the findings with respect to the general injury are supported by the evidence.

On January 28, 1955, Muro was working for Mosel-Terrell, as a sheet metal worker. This was hard labor. He had been steadily employed. He was standing on a scaffold ten feet above a concrete floor when his foreman called to him. He turned and fell to the floor with his feet first hitting the concrete. He then fell forward. Muro weighed 225 pounds. He was taken to the hospital with a broken foot, an injured wrist, and complaints about his back.

Antonio Pena testified that after the accident, and up to the time of the trial, Muro limped, did not walk right, and would drag around. Pena refused to employ Muro in April of 1955. In January, 1959, when this case was tried, Pena, an experienced foreman who hired and fired

men, stated that he would not be able to hire Muro as a sheet metal helper because of his physical condition. Harvey Brown testified that he was general foreman for Mosel-Terrell when Muro was hurt. A year and a half later, Brown hired Muro for some work at his home. Muro was not able to do the work of a common laborer and was unable to keep up with the pace of the work. After working for Brown for about two hours he was "all done in." Before the accident Muro had done this same kind of work for Brown and was able to give a full day's work. Muro has a "definite limp and is kind of hunched over a little bit." Brown said that he would not now be able to hire or keep Muro on a job as a common laborer.

Mrs. Jose Moreno, a neighbor, testified that before the accident Muro was able-bodied, worked every day, and used to work in the yard. After the accident "he is limping; he is not working; he has got a stiff back."

Cecilia Muro, plaintiff's daughter, stated that her father worked regularly every day before the accident and was strong and healthy. After the accident, he works about a third of the time. He is tired all the time, limps, and has trouble walking. He has difficulty getting out of bed in the morning, and she helps him. Muro's wife testified that her husband was strong and healthy before the accident, walked straight, and voiced no complaints. After the accident and while in the hospital he complained about hurting, "especially his back and his wrist." Right after the accident his pain was relieved by shots. The next day he again moaned and groaned with pain. Since the accident, he has regularly and daily complained about pain in his back. This condition did not exist before the accident. Before the accident, he worked in the yard, did heavy lifting and painted. After the accident, he has been able to do little work, no heavy lifting, and no painting.

Muro himself described the fall and his injuries. When he fell his feet and then his buttocks hit the concrete. His back is still hurting. "It seems to me like it is getting worse; it isn't getting any better." Because he was unable to sleep at night, hurting and in pain, six months after the accident he went to see Dr. Haley. Muro said he still has pain "all the time" in his back. He can not walk or bend without pain. His back, foot, and knees never got well. He can not lift and carry like he used to. He is unable to balance himself, cannot do hard work or physical labor. He can not climb, dig ditches, use an air hammer or a tamping machine. While in the witness chair he said that his back was hurting him because he was sitting down.

Fernando Trevino, Muro's brother-in-law, testified that before the accident he had never employed Muro, but he was then an average worker. Since the accident he is a very slow worker, walks with a limp and does not get around like he used to. He has employed Muro in his work of re-modeling houses, for about a year. Muro does not do as good a job as other laborers, and Trevino would not hire him if he were not related to him. He is a very slow worker. He hires him because "I want to help him out as long as I can." When Muro works Trevino pays him the regular wage scale.

Dr. Orin McMillan first treated Muro for a fracture of the left heel bone, pain in his left wrist and low back pain. He said that Muro had tenderness in his lower back after the fall. In November, 1956, some twenty-two months after the fall, Dr. Mc-Millan again took X-rays of Muro's spine, his knees and shoulder, which showed some hypertrophic spurring, but no different from the showing in January, 1955, and Dr. McMillan expressed the opinion that this was normal. The doctor expressed the opinion that Muro's only incapacity was to his left foot and that it was a thirty per cent incapacity. Dr. McMillan diagnosed the back injury as a sprain which was soon

corrected. He said that a low back sprain heals by scar tissue and the disability varies with the individual. Muro's back was very painful for a month. He said that force can aggravate existing arthritis. He had found blood cells in Muro's urine, but considered them minute and unimportant.

Dr. Haley was the other medical witness, Muro consulted him in October, 1955. The doctor examined the original record of the hospital chart which had recorded pain in the left heel, left wrist and low back pain. Dr. Haley ten months after the accident diagnosed Muro's condition as a fracture of the left heel, a back strain or sprain, and a trauma to both knees. At that time, the ankle was swollen and painful and Muro had pain in his back. He said that the condition of the foot upset the center of gravity of the body, it throws the whole mechanics of the man's condition off, he can not maintain the natural balance of the body and can not work at heights above the ground. The swelling in the foot is permanent. Dr. Haley at one point in his testimony made this significant statement:

"I think his back is injured. I think he has a certain amount of disability. I think he gets along fairly good in the summer time, but this type of weather is going to cause him a lot of pain. I think it depends entirely upon the type of work that he does."

He testified directly that he thought the fall caused the lumbo-sacral sprain. He stated that a pre-existing arthritic condition with a lumbo-sacral sprain imposed upon it is a painful condition which restricts body movements such as forward bending. He stated: "I believe this man, since the injury, cannot do the work of lifting or the manual work that he did before." Heavy lifting such as carrying a hod of brick would cause pain in Muro's back. Dr. Haley would not pass Muro for a job. This testimony related to Muro's condition at the time of trial, more than three years after the accident.

Dr. Haley gave some conflicting opinions which defendant relies upon. In a "no evidence" case, however, our task is to find those elements of evidence which support a finding rather than to weigh contradictory statements even of the same witness. Dr. Haley stated that Muro complained of back injury on several visits to his office. He prescribed sodium salicylate, vitamin B-12, APC and aspirin tablets, and stated that such medication is given for indefinite muscular pains, muscular arthritis, lumbo-sacro sprains and lumbago pains. As late as May, 1958, he was still giving that treatment to Muro. With respect to the specific injury, Dr. Haley expressed the opinion that the deformity is permanent and that it affects Muro's balance. He stated that Muro's back has to make allowance for that, that to favor his foot, his back is bent, and his pelvis is tilted, which sometimes results in pain. He does not believe Muro can do heavy manual labor for a prolonged period.

From several witnesses—lay, party, and medical—there is evidence that Muro's back was injured in the fall, that it has continuously pained him to the time of trial, that it is stiff and pains him when he bends forward, and that he was treated for low back pain for an extended period after the accident. Before the accident, he was regularly employed. After the fall, Pena and Brown, who formerly employed him, would not employ him, except for limited types of work. After four weeks working for Bednarz Construction Company he was fired because he could not dig ditches. After three days with Lynwood Brick and Tile Company, he was fired because he could not keep up with other workers. On a job building a school he was laid off while others stayed on the job. After three weeks with Rheiner Construction Company he was fired because he could not keep up with the other men. Though he has worked many places for a few days, weeks or months, he was frequently laid off before the work was completed. Both medical witnesses testified they would not pass him for common labor. Since the accident he has had no job from

which he was not fired, except that afforded by his brother-in-law for whom he worked at varying wages per week, and his brother-in-law saved the light work for Muro.

Particular portions of the conflicting evidence constitute the basis for defendant's contention that Muro's injury was not total and permanent. For instance, Dr. Haley testified on cross-examination that the original injury to the spine was cured and that the present pain is due to the ambulation of the heel. This medical opinion does not rub out evidence and inferences to the contrary. Defendant also argues that the lay testimony shows only that Muro was slow, could not keep up, and was not physically balanced. The jury could well conclude that the reason he was so frequently fired was that he was slow and could not keep up. Muro admitted he could do some work, but only if he could do it "slow and easy." There is ample evidence and inference from the evidence, that back pain required this "slow and easy" work, and also that employers neither hire nor keep that kind of workman, nor do physicians pass them for work.

■ What may jurors do with conflicting evidence before them? They may disbelieve a witness though he is neither impeached nor contradicted. Cheatham v. Riddle, 12 Tex. 112. They may believe one witness and disbelieve others. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. They may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792. They are not required to depend upon the evidence from a single source. Texas & N. O. Ry. Co. v. New, Tex.Civ.App., 95 S.W.2d 170, 174. They may accept or reject in whole or in part the opinion testimony of physicians. They may accept lay testimony over that of experts. Opinion testimony does not establish material facts as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Fry v. Dixie Motor Coach

Corporation, 142 Tex. 589, 180 S.W.2d 135; Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943. "If the opinions of the experts as given in the evidence do not comport with the jurors' idea of sound logic, the jurors have a right to say so." Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64.

■ Defendant also argues that Dr. Haley, Muro's own doctor, stated that he would pass Muro for hundreds of jobs. He did so testify. By way of explanation, however, he said he would pass Muro for a job selling pencils, or for a position as a bank president. What, then, is the test? The law does not require compensation claimants to beg. Nor does it disqualify an injured common laborer because he possesses the physique to enter the professions. The test is whether Muro can perform the usual tasks of a workman in such a way as to procure and retain employment as a workman. Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000. The jury could well conclude from this case that Muro is not qualified to do anything but common labor, and that he can not do that. He can neither obtain employment as such nor retain it, as his history discloses.

The argument which seems most convincing that Muro was not totally and permanently incapacitated, is that if he were so incapacitated he could not work, whereas, he had worked often at many jobs. This evidence, however, is not conclusive of the test which is whether he can obtain and retain employment, as has often been held. Muro obtained several jobs, but lost them. The opinion of both doctors was that they would not pass him for work as a common laborer, and an abundance of evidence showed that was the only thing he could do. Tested against this standard, Muro raised fact issues on his capacity to work. Texas Employers' Ins. Ass'n v. Goforth, Tex.Civ. App., 307 S.W.2d 610; Gulf Casualty Co. v. Jones, Tex.Civ.App., 290 S.W.2d 334; American General Ins. Co. v. Bailey, Tex. Civ.App., 287 S.W.2d 290; Texas Employ--

ers' Ins. Ass'n v. Taylor, Tex.Civ.App., 276 S.W.2d 901; Texas Employers' Ins. Ass'n v. Evers, Tex.Civ.App., 242 S.W.2d 906; Federal Underwriters Exchange v. Tubbe, Tex.Civ.App., 193 S.W.2d 563, 566. Accord, Consolidated Casualty Ins. Co. v. Smith, Tex.Civ.App., 309 S.W.2d 80; Consolidated Casualty Ins. Co. v. Baker, Tex. Civ.App., 297 S.W.2d 706. We, therefore, arrive at the conclusion that there was evidence which supports the jury findings of an accidental injury to Muro's back which produced incapacity to work which was total and permanent.

 Defendant urged several cross-points. Muro testified to certain family hardships which compelled him to seek employment. Defendant admitted hardship with respect to a lump sum payment, and argues that this admission rendered this information immaterial. This point was discussed in Muro v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 210 S.W.2d 420, and the evidence was here offered under the same circumstances there discussed. If the defendant relies upon the work record to prove no incapacity, the workman may explain that the work was undertaken under necessitous circumstances.

 Defendant also argues that Muro's medical witness was permitted to interpret an X-ray report of another doctor who did not testify, when the report was not in evidence. It is a correct statement that one expert may not base his opinion upon the hearsay opinions of other experts. Texas Employers' Ins. Ass'n v. Boyd, Tex.Civ.App., 199 S.W.2d 257; United Employers Casualty Company v. Thornton, Tex.Civ.App., 151 S.W.2d 920. The testimony sometimes came in without objection. The only thing we find which relates to Muro's general back injury is a reference to the report wherein it said: "Some osteoarthritic spurring is noted of the lumbo-sacral spine." The doctor then explained the meaning of "spurring" and further said that in the case of Muro, spurring would be normal for a person of his age and experience with hard

work. Certainly, an answer that the plaintiff's condition was normal could not have harmed the defendant. Moreover, it was cumulative of similar evidence given by the defendant's medical expert who testified to exactly the same thing on examination by the defendant. The evidence was harmless.

 Another cross-point complains of a side-bar remark by Muro's counsel. Counsel asked Dr. Haley what class of patients he treated, and then said, "Doctor, I likewise represent working people." Objection to that remark was sustained. Muro's counsel then said: "I did have a rich client at one time, if the Court please." Upon objection, the court stated he did not hear the remark, but sustained the objection. Counsel then withdrew the remark. Such comments cheapen the administration of justice. However, it was not again repeated after the court sustained the objection and after counsel withdrew it. It was not material enough to control the disposition of the case.

 A nice procedural matter is presented with respect to our disposition of this case. Defendant failed to get jury findings but obtained a judgment notwithstanding the verdict. This means that the trial court believed there was no evidence to support the findings. Had the trial court believed that the findings were against the overwhelming preponderance of the evidence for the judgment, it would have set aside the verdict and granted a new trial. Gulf, Colorado & Santa Fe Railway Co. v. Deen, Tex., 312 S.W.2d 933.

In the Court of Civil Appeals, appellee first urges that this Court should affirm the judgment because there was no evidence. Alternatively, appellee urges that the findings are against the overwhelming preponderance of the evidence. Appellee, therefore, argues that if we hold that there was evidence to defeat its contention of no evidence, still we should not render, but should remand on the grounds that the findings are against the overwhelming preponderance of the evidence.

Ordinarily it is the trial court which first decides whether a new trial should be granted, because the findings are against the overwhelming preponderance of the evidence, and ordinarily from such a decision there is no appeal. Formerly, this would mean that the Court of Civil Appeals should remand for the trial court to pass on this matter. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95. This resulted in a remand to the trial court and a second appeal before the matter of "great weight of the evidence" could be passed upon by the Court of Civil Appeals. To reduce the number of trials in those situations where the record was fully developed, Rule 324, Texas Rules of Civil Procedure, was amended in 1957, after the De Winne case, so the Court of Civil Appeals could go ahead and decide the case. According to the amended rule, if the appellee fails to bring forward his contention that the verdict should be vitiated because it is against the overwhelming preponderance of the evidence, he will waive the point, except in those cases which require the taking of additional evidence, as in the case of jury misconduct.

The philosophy of the rule, therefore, is that an appellee who takes the calculated risk of seeking a judgment notwithstanding the verdict, foregoes his right to have the trial court first pass upon the great weight of the evidence, and contents himself with leaving that decision to the Court of Civil Appeals, when and if he raises the point in that Court by proper cross-point. 4 Tex. Jur.2d, Appeal and Error—Civil, § 910. By a liberal construction of appellee's brief, we believe it has raised the point. Without detailing all of the evidence, but after an examination of the whole record, including that evidence which is both favorable and unfavorable, we conclude that reasonable minds might differ with respect to the findings on each of the issues the trial court set aside, both on the general and the specific injury, and hold that the findings are not against the overwhelming preponderance of the evidence.

Accordingly, the judgment is reversed and rendered in accord with the jury findings that Muro sustained total and permanent injuries to his back.

MURRAY, C. J., disqualified and not sitting.

### On Motion for Rehearing.

In our original opinion, we stated that both medical experts testified they would not pass Muro for work as a common laborer. Only Dr. Haley so testified. Appellee renews its insistence that the trial court erred in permitting Muro to prove the necessitous circumstances which impelled him to seek employment. This is the same matter which we discussed in Muro v. Houston Fire & Casualty Ins. Co., Tex.Civ. App., 310 S.W.2d 420. On cross-examination, appellee interrogated Muro, step by step, about every employment he had obtained since the injury. In detail he was questioned about the nature and duration of the work, seeking thereby to prove his ability to do hard work. To rebut this evidence, on re-direct, Muro testified that he went to work first with Mex-Mo, six months after the injury. He was sore, his feet, knees and back hurt him. He said, "I just had to work, and I went to work, pain and all." He gave similar testimony about his other jobs. He testified that he was married, had six children, his wife was pregnant, and his credit exhausted. This proof was in answer to the work record which appellee relied upon to defeat the whole action. If it is a legitimate inference that a plaintiff is well because he works, it is a legitimate reply that he works, though sick, because he is in need. When defendant opens the door by proof that the plaintiff is well and able to work because he has worked, he will not be heard to complain of evidence that the plaintiff worked, not because he was well, but because of economic compulsion.

The motion is overruled.