Delos THOMPSON, Appellant,

v.

NORTHERN PUMP COMPANY, Appellee.

No. 13897.

Court of Civil Appeals of Texas.

San Antonio.

March 14, 1962.

Rehearing Denied April 11, 1962.

Strickland, Wilkins, Hall & Mills, Asa V. Bland, Mission, for appellant.

Keys, Russell, Keys & Watson, Corpus Christi, Kelley, Looney, McLean & Littleton, Edinburg, for appellee.

POPE, Justice.

Delos Thompson sued Northern Pump Company for damages to realty. The jury answered all issues for plaintiff. The court gave Thompson judgment for $1,035, permanent damages to two and one-half acres of land, but granted judgment notwithstanding the verdict as to temporary damages to an additional twenty-three acres. Thompson insists that there is evidence, more than a scintilla, which supports the jury findings that Northern's oil operations deprived Thompson of the temporary use of twenty-three acres of his land, which caused damages in the sum of $1,900.19. In our opinion, there was evidence which supported the jury findings.

Thompson's land is a rectangular tract. At the northeast corner of the tract there is a water gate and a ditch which extends southward along the eastern boundary. To irrigate the tract the water would flow from the ditch toward the west to about the center of the tract which was low. At the southwest corner of the tract there is another water gate and another ditch extends along the western boundary. To irrigate, the water must flow from that ditch toward the east to the center of the tract. It is Northern's contention that all of the undisputed evidence shows that it did not interfere with the irrigation. In determining whether there is any evidence in support of the findings, we indulge all inferences in their favor. Harrison v. Chesshir, 159 Tex. 359, 320 S.W.2d 814.

We have read the statement of facts and find evidence in support of the verdict. Prior to 1951, this land was planted with citrus trees and was irrigated. After a freeze in that year the trees were ruined and the land was cleared. In 1952 the land was planted in maize, and in 1953 it was planted in corn. From 1950 to 1955 there was a drought. Thompson determined to stop irrigating and to plant the land in grass. Sometime during that period the land was planted in cane. During 1956 and 1957 the land was in grass. In 1958, Northern moved on the land under an oil lease, drilled an oil well and built a dirt road from the west side to the east side, which bisected the land. It pushed in the irrigation ditch on the west side and built its road across the ditch. Thompson planted nothing in 1958, but in 1959 he planted a clover crop which was a failure because of his inability to irrigate the crop.

Immediately prior to Northern's entry, Thompson had cleaned the land and had it staked for leveling. Some of the stakes were knocked down by Northern when it entered and built its road, drilled its well and located its well and heater near the eastern boundary. The leveling was never completed. A neighbor testified that the land was "fairly irrigable." Another neighbor testified that the whole tract could be irrigated except for a small portion in the

southwest corner, for which Thompson made no claim. This witness testified that the road constructed by Northern cut the tract in two, which interfered with the turns of the farm machinery and also the irrigation system by which the water gravitated to the center of the field. Roy Thompson, who managed the tract, testified that he could not irrigate the tract because of Northern's road and well. He stated that he had never run water on the road, which is another way of saying that to irrigate would inundate the road. Moreover, there was evidence that the road had been built by filling in the ditch on the west side, without inserting culverts or tile to permit the flow of water. This evidence is from several sources.

Northern argues that plaintiff admitted that he had given up irrigation several years earlier. Taken in context with the evidence of a drought, which forced him to shift from farming to dairying, his testimony is explainable as a temporary cessation until the drought was broken. In any event, plaintiff produced evidence that the land was once irrigable, but now is not by reason of Northern's changes in the field. This is not a case for a judgment notwithstanding the verdict.

Northern's brief contains counterpoints that the judgment notwithstanding the verdict was proper, and also that the jury findings were against the great and overwhelming weight of the evidence. Under Rule 324, Texas Rules of Civil Procedure, as amended in 1957, we must go further and determine whether we should remand the case for that reason. From an examination of the record in the whole case, including the evidence which is favorable and unfavorable to the findings, we conclude that the findings are not so against the great weight of the evidence as to be manifestly unjust. Muro v. Houston Fire & Casualty Insurance Co., Tex.Civ.App., 329 S.W.2d 326, 332.

Accordingly, we affirm that part of the judgment which granted permanent dam-

ages, about which there is no complaint on appeal, and we reverse the judgment of the court which denied temporary damages and here render judgment that Thompson also recover the sum of $1,900.19 for temporary damages.