Benancio M. AGUIRRE, Appellant,

v.

PAN AMERICAN INSURANCE COMPANY,
Appellee.

No. 14609.

Court of Civil Appeals of Texas.

San Antonio.

July 19, 1967.

Rehearing Denied Sept. 13, 1967.

William R. Edwards, Corpus Christi, Arnold Garcia, Alice, for appellant.

Keys, Russell, Watson & Seaman, Corpus Christi, for appellee.

BARROW, Chief Justice.

This is a workmen's compensation case. Judgment was entered on the jury verdict that appellant's injury of June 24, 1965, was a producing cause of two weeks temporary total incapacity and that he did not sustain any partial incapacity.

Appellant asserts by this appeal that there is no evidence, or the evidence is factually insufficient, to support the jury finding to Issue No. 6, that he did not sustain any partial incapacity after June 24, 1965. His argument is largely based on the erroneous assumption that the jury finding is "that since July 8, 1965, Aguirre sustained no incapacity of any kind whatsoever *from any cause whatsoever*." He urges that since the uncontradicted medical evidence showed that at the time of the trial on November 30, 1966, he had physical conditions which demonstrated some disability, the finding of no partial incapacity was against all of the evidence and against the great weight and preponderance of the evidence.

It is seen, however, that the definition of "partial incapacity" restricted the jury to consideration of incapacity "by reason of injuries sustained in the course of his employment."[1] Therefore, we must consider the evidence in the light of the court's defi-

nition of "partial incapacity" in determining appellant's points.

Appellant was injured on June 24, 1965, in the scope of his employment as a truck driver for Valley Capitol Service, Inc., hereinafter referred to as Val-Cap, Inc., when he was struck on the back by a heavy chain thrown over a trailer by a fellow employee. On the day following the accident, he went to see the company doctor, Dr. Albert, in regard to his injury. Dr. Albert was unavailable and, therefore, appellant was examined by Dr. John C. Turnham, who was taking Dr. Albert's calls. Aguirre was given a muscle relaxant and medication for pain. He was hospitalized the following day when the pain had not subsided. He remained in the hospital from June 26 to June 29, 1965. In the hospital, he was placed in traction to reduce muscle spasm and given a muscle relaxant. On June 29, 1965, he was discharged with the notation in his hospital record: "Improved." The diagnosis of Dr. Turnham was "Acute back strain. Possible HNP, which is herniated nucleus pulposus."

Dr. Turnham testified that at the time of discharge appellant was markedly improved, and that he believed, with an additional week of rest, appellant would be all right. Appellant never returned for further treatment and Dr. Turnham had not seen him since June 29, 1965.

Appellant returned to his regular duties with Val-Cap, Inc., on July 8, 1965, and worked without complaint or incident until he was laid-off on October 11, 1965, for reasons not connected with his injuries. On October 17, 1965, he went to work as a truck driver for Ken Clark Pipe Supply Co., and worked for Clark until May 13, 1966. He went to Ohio with his family during the summer of 1966 and worked some as a to-

---

[1] "By the term 'partial incapacity,' as used in this charge, shall mean where an employee by reason of injuries sustained in the course of his employment is only able to perform part of the usual tasks of a workman, but nevertheless, is able to procure and retain employment reason- ably suitable to his physical condition and ability to work or is only able to perform labor of a less remunerative class than he performed prior to his injuries, whereby he suffers a depression or reduction in his earning capacity."

mato picker. After his return he worked for Clark when the latter had work for him. Appellant testified that his back pained him when he worked.

The evidence that appellant returned to his regular work on July 8, 1965, and worked without difficulty until about January, 1966, is sufficient evidence under the "no evidence" test[2] to support the jury finding of no incapacity after July 8. Although the fact that a claimant works and earns money after the injury does not necessarily preclude him from recovering benefits for the time he was gainfully employed, such a fact is evidence to be considered with the other facts and circumstances. Texas Emp. Ins. Ass'n v. Cummings, 364 S.W.2d 255 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.); Consolidated Cas. Ins. Co. v. Baker, 297 S.W.2d 706 (Tex.Civ.App.—Waco 1957, writ ref'd n. r. e.)

To determine appellant's second point that the finding of the jury to Issue No. 6 is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, we must examine the entire record.[2] Two doctors testified on behalf of appellant that he was unable to perform manual labor. Dr. Burns, a neurological surgeon, examined appellant at the request of Dr. Sharp, on October 3, 1966, and again on November 28, 1966. He found a degenerative disc pathology with a narrowing between the L4–L5 and L5–S1 vertebral spaces. One of these narrowed interspaces was causing nerve pressure as demonstrated by a positive dermatone pattern, atrophy of the right calf, and the absence of a right ankle jerk, although Dr. Burns was not sure which of the two interspaces was causing the trouble. The degenerative changes were a gradual process and created a condition which would have eventually caused trouble, but in his opinion the injury was the contributing or aggravating cause of appellant's difficulty, as it was the "straw that broke the camel's back."

On cross-examination, Dr. Burns admitted this his diagnosis was based largely on the accepted fact that there was no other incident in appellant's history to precipitate the degenerative condition, and that if the injury of June 24, 1965, had been the contributing cause, it should have caused trouble in a few days. He also admitted that if appellant returned to work with no complaints or trouble, you would assume that he had fully recovered from the chain injury. The narrowed interspaces existed prior to this injury, in that the x-rays of June 26, 1965, showed the same narrowing of these two interspaces as the x-rays of January 16, 1966.

Dr. James C. Sharp commenced treating appellant on January 17, 1966, upon referral by appellant's attorneys. He also diagnosed the two degenerated vertebral discs at the L4–L5 and L5–S1 levels. It was also his opinion that there was a protruded disc at one of these levels causing nerve pressure. The accident of June 24, 1965 was the precipitating cause of appellant's condition even though the degenerative condition had developed over a long period of time. Dr. Sharp testified it was necessary for an accident to trigger off the pre-existing condition in appellant's back, and since there was no other incident in appellant's history, he attributed same to the accident in question. Dr. Sharp admitted, on cross-examinaion, that the condition could be triggered off by a minor incident, such as appellant's bending over to tie his shoes or to pick up a pencil or even in his sleep. Dr. Sharp testified that appellant's degenerative condition was such prior to the injury that he would not have passed him on a pre-employment physical exam.

2. Garza v. Alviar, 395 S.W.2d 821 (Tex. Sup.1965); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R. 2d 1114 (1951); Calvert "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

The first significant pain suffered by appellant after returning to work on July 8, 1965, was in January, 1966, while returning from a three-day and two-night trip to Wyoming. Dr. Sharp admitted that such an extended trip might cause onset of symptoms. Both Dr. Burns and Dr. Sharp admitted that as a general rule the symptoms develop closer in time to onset. Dr. Burns testified that the rapid loss of the ankle jerk between his October and November, 1966, examination indicated the cause was of recent origin.

Appellee had appellant examined shortly before trial by Dr. Norstrum, a neurological surgeon. However, Dr. Norstrum was not called as a witness, and the physical findings of Doctors Sharp and Burns are uncontradicted.

Assuming that the uncontradicted evidence establishes that appellant suffered some incapacity after July 8, 1965, we cannot say from an examination of the entire record that the evidence is factually insufficient to support an implied finding of the jury that such incapacity was not precipitated by the injury sustained in the course of his employment. The jury was not bound by the opinion of Dr. Burns and Dr. Sharp that the injury was the contributing or aggravating cause of appellant's incapacity. Hood v. Texas Indem. Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948); Muro v. Houston Fire & Cas. Ins. Co., 329 S.W.2d 326 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.)

It is our opinion, after an examination of the entire record, that the jury's finding that appellant had not sustained any partial incapacity, as that term was defined to them, after June 24, 1965, is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

The judgment is affirmed.